THE STATE OF CONNECTICUT *vs.* THOMAS TOBIN.

Third Judicial District, Bridgeport, October Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

No error is committed by the trial court in refusing to comply with a request to charge which is based upon an unwarranted assumption respecting the nature and effect of the evidence, and one which, had it been given, would have withdrawn from the jury facts important for them to consider.

In determining whether a saloon-keeper allowed females "to loiter" upon his premises, evidence of the character of the place, its surroundings and its customers, is relevant and material for the jury's consideration.

It is of no avail for an appellant to criticise detached sentences of a charge if the instructions as a whole are correct and adequate for the guidance of the jury.

An appellant cannot object to an instruction which is more favorable to him than it should have been, although erroneous.

Argued October 29th—decided December 17th, 1915.

PROSECUTION for allowing females to loiter upon premises of the accused where intoxicating liquors were kept for sale, brought to the Criminal Court of Common Pleas in Fairfield County and tried to the jury before *Davis, Acting-Judge;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*John C. Chamberlain,* for the appellant (the accused).

*Frederick W. Huxford,* Prosecuting Attorney, for the appellee (the State).

RORABACK, J. This is a complaint for allowing women to loiter on premises where liquors are kept for sale. The statute upon which this complaint is founded provides that every licensed person who shall allow any female to loiter on his premises where intoxicating liquors are kept for sale, shall be subject to a penalty, etc. Public Acts of 1909, Chap. 196, p. 1121.

The accused complains because the trial court refused to instruct the jury, as requested, that "if there is no other evidence before you than the facts that certain women entered the door of this place in question belonging to the accused, and did not emerge for periods varying from one-half to two hours, this is not sufficient to justify you in finding him guilty of permitting females to loiter in the place where liquors

are sold, as set forth in the complaint." A simple and sufficient answer to this objection is to be found in the facts which the State offered to prove and which were not contradicted by the defense. From this evidence it appears that the accused, in February, 1915, and for a long time previous thereto, was a licensed person, whose place was known as "The Star Cafe." It was located on Middle Street, and next door to a rooming house, in the city of Bridgeport. This saloon had two rooms; one thirty feet square and the other still larger. The front room was a barroom. In the rear room were fifteen or eighteen tables and a piano. The defendant and his saloon were under the surveillance of the police department of Bridgeport for more than one week in the month of February, 1915, which culminated in a raid, in which the accused was arrested. The place was watched for about three hours every night, by policemen, from a point on the opposite side of the street, where they had an unobstructed view of the saloon. These officers knew the proprietor and the women who visited the place, when they entered and left it, and the frequency of their visits. No less than eight reports showing in detail what these officers observed were placed in evidence. About five pages of the record are filled with this testimony. This, and other evidence supplementing it, would have amply justified the jury in finding that the saloon was resorted to by disreputable women who remained there for protracted periods of time. The nature of it may be inferred from that which follows. On the 13th day of February, 1915, at about the hour of 10:30 o'clock in the evening, a squad of police officers raided this saloon and arrested the defendant, who was found there. When the police entered a man was playing the piano and another man was singing. There was a crowd of forty or fifty men in the front room; and sixty or seventy

persons were in the rear room. Nine of these were women. The women were all seated at tables and there was a glass of beer or liquor on the table before them, with two exceptions. The defendant was constantly in the saloon while it was watched by the police, being frequently seen and observed by the officers. He was also found there when the raid was made. The defendant stated that he did not care how long a period of time, or for what purposes, the women remained in the saloon, unless they violated a certain rule of the house, which was "no smoking, no profanity." The record also discloses that no evidence of any kind was adduced by the defendant upon the trial of the case.

The evidence before the jury did not warrant the instruction called for by the request hereinbefore stated. It was an assumption not supported by the evidence, and was too favorable to the accused. If given as requested, it would in effect have withdrawn from the consideration of the jury important facts proper for them to consider. The saloon of the defendant, its surroundings and customers, certainly had some bearing upon the guilt or innocence of the accused. Without going further into the details of the uncontradicted evidence presented by the State, it is sufficient to say that it is quite certain that the instructions requested by the accused were not adapted to the case before the jury.

Error is assigned to that passage of the charge in which the judge stated: "Now, gentlemen, it is for you to say whether the fact that these women were in that place for the length of time that has been testified to here, with the permission and consent of the accused, Tobin, constituted loitering within the law." We are not called upon to determine whether or not the jury may not have fairly drawn the inference that

these women were loitering, from the fact that they went into this saloon and remained there for stated periods. That is not the present case. The remarks of the court just noticed did not stand alone upon this point. It appears from the record that the judge had just been commenting upon the testimony of the policemen as to the general character of the saloon, its surroundings, location of the bar, and the number of men and women who were found in this place the night when the raid was made, and what they were doing as the police officers entered the place. It also appears that almost immediately following the instructions now in question, the jury were told: "Now as to loitering; to loiter, means to be dilatory, to stand idly around, to spend time idly. It is for you to say whether these women in going into that place on those nights and being in there the length of time that they were, were spending their time idly or not. If they were spending their time idly there they were loitering; they were doing what the law says means to loiter, to spend time idly; and it is for you to say, gentlemen, you are the judges of the fact, whether these women in going in there on those occasions and staying there the length of time they did, were loitering or not."

The word "loitering" is in common use. Webster defines the word: "to be slow in moving; to delay; to linger; to be dilatory; to spend time idly; to saunter; to lag behind." Thus it appears that the jury were properly instructed as to what constituted loitering. It was then left for them to determine, as a question of fact, whether or not the women were loitering within the definition which had been given them. It has been repeatedly stated by this court that, as a general rule, detached sentences, which are part of a charge, are to be considered in connection with the context

and with the instructions as a whole. When this is done in the present case, this exception is without merit. What has been stated in relation to this assignment of error is also applicable to the third reason of appeal.

Complaint is also made because the court below stated that there was not any evidence as to what these women were doing after they went inside of the saloon. This, as we have seen, was clearly a misstatement of the evidence, but it was not prejudicial to the accused. This objection should not have come from the party whom it benefited. It is a familiar rule that a party cannot object to instructions which are more favorable than they should be, although erroneous.

There is no error.

In this opinion the other judges concurred.