LAWRENCE M. AKERS ET AL. *v.* ETHEL SINGER, ADMINISTRATRIX (ESTATE OF BERNARD J. SINGER)

ETHEL SINGER, ADMINISTRATRIX (ESTATE OF BERNARD J. SINGER) *v.* LAWRENCE M. AKERS ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued February 4—decided March 5, 1969

*John J. Hunt*, with whom were *Samuel Engelman* and, on the brief, *Melvin Fennell*, for the appellant (defendant) in the first case.

*Samuel Engelman*, with whom were *John J. Hunt* and, on the brief, *Melvin Fennell*, for the appellant (plaintiff) in the second case.

*Richard P. Gilardi*, with whom was *Richard F. Oburchay*, for the appellees (plaintiffs in the first case and defendants in the second case).

THIM, J. The administratrix of the estate of Bernard J. Singer has taken appeals from the judgments in two cases, and they have been combined in a single record. Both cases arose as a result of an accident which occurred on the Connecticut Turnpike at Bridgeport, and they were consolidated and tried together.

In the first case, Lawrence M. Akers and his employer, the Pressed Steel Tank Company, brought an action for negligence against the Singer estate to recover damages for personal injuries and property damage. The administratrix of the estate pleaded contributory negligence as a special defense. Shortly thereafter, the administratrix initiated an action on behalf of the estate against Akers and the Pressed Steel Tank Company to recover damages for the decedent's death alleged to have been caused by the negligence of Akers while he was acting as the agent for his employer. Akers and his employer pleaded the special defense of contributory negli-

gence. In both cases, the jury found the issues in favor of Akers and the Pressed Steel Tank Company.

## I

The administratrix of the Singer estate seeks to correct paragraphs of the finding. We shall not, however, consider the errors assigned to the finding because they have not been pursued in the brief and are thus treated as abandoned. *Sherman-Colonial Realty Corporation* v. *Goldsmith,* 155 Conn. 175, 183, 230 A.2d 568; *State* v. *Benson,* 153 Conn. 209, 212, 214 A.2d 903; *Adamsen* v. *Adamsen,* 151 Conn. 172, 173, 195 A.2d 418.

## II

The administratrix claims that the trial court committed error in denying her motion to set aside the verdicts. The question thus presented is whether the trial court abused its legal discretion in denying the motion to set aside the verdicts. *Brooks* v. *Singer,* 147 Conn. 719, 158 A.2d 745; *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596. In determining whether the trial court abused its discretion, we decide only whether the jury could reasonably and logically have reached the conclusion which they did; *Cayer* v. *Salvatore,* 150 Conn. 361, 364, 189 A.2d 505; *Conti* v. *Brown,* 149 Conn. 465, 467, 181 A.2d 591; *Desmarais* v. *Pinto,* supra; *Loomis* v. *Perkins,* 70 Conn. 444, 446, 39 A. 797; see *Badela* v. *Karpowich,* 152 Conn. 360, 363, 206 A.2d 838; and we consider the evidence in the light most favorable to sustaining the verdicts. *Terminal Taxi Co.* v. *Flynn,* 156 Conn. 313, 314, 240 A.2d 881; *Blados* v. *Blados,* 151 Conn. 391, 393, 198 A.2d 213.

The jury could have reasonably found the follow-

ing facts: On February 8, 1965, at about 6:15 p.m., Bernard J. Singer was driving his automobile in an easterly direction on the Connecticut Turnpike. At the same time, Lawrence M. Akers was driving a tractor-trailer owned by the Pressed Steel Tank Company in the center lane and was also traveling in an easterly direction. Akers was traveling about fifty miles per hour, the posted speed, when the Singer vehicle passed him in the left lane and shortly thereafter turned into the center lane. When Singer's vehicle was about forty yards ahead of Akers' truck, the car began to skid sideways, the brake lights went on, and it turned broadside to the truck. After the elapse of a few seconds, the truck collided with the right rear portion of Singer's vehicle. The truck mounted the car and pinned it underneath. In this position, the two vehicles careened to a stop at the median divider of the highway about 400 feet from the point of impact. Before the vehicles came to a complete stop, a fire started at the rear of the truck, and within a short time flames engulfed both of the vehicles. Singer died before he could be removed from the wreckage.

The two verdicts in favor of Akers and his employer import a jury finding that Singer's negligence was a proximate cause of the accident and that Akers was not negligent or, if he was, his negligence was not a proximate cause of the accident. At the trial, there was considerable testimony describing the manner in which the Singer vehicle was driven up until the moment of the collision. Witnesses testified that the Singer car passed Akers' truck, which was traveling at the posted speed limit, and that the car then cut in ahead of the truck just prior to the collision. We do not believe that the jury strained the limits of reasonable probability by con-

cluding that Singer's speed and change of lanes constituted negligence which was the sole proximate cause of the accident. It was reasonable for the jury to draw the inference that it was more probable than not that Singer was the responsible agent for the loss of the control of his vehicle. *Badela* v. *Karpowich,* supra; *Blados* v. *Blados,* supra, 394; *Danzell* v. *Smith,* 150 Conn. 35, 41, 42, 184 A.2d 53.

At the trial, Akers admitted that he did not apply his brakes to avoid a collision because of the danger of jackknifing his truck; he did, however, direct his truck toward the left lane in an attempt to avoid hitting the Singer vehicle. We do not believe that Akers' failure to apply his brakes was negligence as a matter of law. Akers was faced with a sudden emergency, and, considering the speed and momentum of the truck, the jury could reasonably conclude that his failure to apply the brakes was not negligence. *Danehy* v. *Metz,* 140 Conn. 376, 380, 100 A.2d 843.

### III

The administratrix claims that, even if the estate is liable for the injuries sustained by Akers, the damages which the jury awarded him were excessive. The jury awarded Akers a verdict of $9500 to compensate him for his personal injuries, and the court ordered a remittitur of $3700, which was subsequently filed.

Akers testified that after the accident he suffered a bruised left knee, nervousness, headaches, dizzy spells, blurred vision and sleeplessness. Moreover, as a result of the accident, he was out of work for about two and one-half months, and he consulted doctors on about five different occasions. At the trial, Akers did not produce any expert medical testi-

mony relating to the cause or the extent of his injuries, nor did he introduce any medical bills into evidence. Although a verdict of $5800 is a liberal one, we cannot say that it exceeds the permissible limits of just damages or that it so shocks the sense of justice as to compel the conclusion that the jury were partial, prejudiced, corrupt or mistaken. *Hook* v. *Dubuque,* 153 Conn. 113, 115, 214 A.2d 376; *Butler* v. *Steck,* 146 Conn. 114, 118, 148 A.2d 246; *Sheiman* v. *Sheiman,* 143 Conn. 222, 223, 121 A.2d 285.

## IV

The administratrix' final claim is that the trial court committed error by admitting testimony on cross-examination which was not within the scope of the subject matter covered on direct examination. There is no merit to this claim for reasons hereinafter stated.

The defendant Akers called Michael DiZazzo as a witness. DiZazzo testified that he had observed the Singer car just prior to the accident and that he was positioned about 750 feet from the median divider of the Connecticut Turnpike. He gave further testimony describing the manner in which Singer had been driving his car just before the accident.

In order to impeach DiZazzo's unfavorable testimony, the administratrix called Wilbur A. Griscom to the stand. Griscom was a surveyor who had drawn a map of the Connecticut Turnpike and its environs at the site of the accident showing the distance between the points where DiZazzo testified he had stood and where the collision occurred. Griscom testified that the place where DiZazzo claimed that he was standing was about 1280 feet from the site of the collision rather than the 750 feet which DiZazzo had testified was the distance.

On cross-examination, Griscom was asked whether the space between DiZazzo's position and the site of the collision was unobstructed by buildings. Griscom answered that the area was vacant owing to the demolition of buildings as part of a redevelopment plan. Griscom was then asked whether the turnpike was well lit at the place of the collision, and he responded that it was well-illuminated. Finally, Griscom opined that a person standing in DiZazzo's position would have a clear, unobstructed view of the turnpike.

While proper cross-examination must be related to the subject matter of direct examination; *Mendez* v. *Dorman,* 151 Conn. 193, 198, 195 A.2d 561; the trial court is allowed a liberal discretion in fixing its limits. *Papa* v. *Youngstrom,* 146 Conn. 37, 40, 147 A.2d 494; *Fahey* v. *Clark,* 125 Conn. 44, 46, 3 A.2d 313.

We do not believe that the trial court abused its discretion by permitting Akers on cross-examination to ask Griscom questions relating to DiZazzo's ability to view the site of the collision. Griscom was called by the administratrix to impeach DiZazzo's testimony and to raise questions about his ability to view clearly the accident site. The court properly permitted Akers on cross-examination to rehabilitate DiZazzo's testimony by bringing out additional facts to rebut the inference, which might have been drawn by the jury, that DiZazzo could not view the accident site clearly. *Shulman* v. *Shulman,* 150 Conn. 651, 661, 193 A.2d 525; *Levine* v. *Marcus,* 90 Conn. 682, 684, 98 A. 348.

There is no error in either case.

In this opinion the other judges concurred.