STATE OF CONNECTICUT *v.* MICHAEL R. ROY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued March 1—decision released April 26, 1977

*Jerrold H. Barnett*, public defender, with whom were *Clement F. Naples* and *Richard Emanuel*, assistant public defenders, and, on the brief, *James D. Cosgrove*, chief public defender, for the appellant (defendant).

*Richard F. Jacobson*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Eugene J. Callahan* and *Domenick J. Galluzzo*, assistant state's attorneys, for the appellee (state).

BARBER, J. On a trial to a jury, the defendant was found guilty of violating § 53a-171 (b) of the General Statutes in that on September 27, 1974, he escaped from custody while charged with the felony of burglary in the third degree. The court rendered judgment accordingly and sentenced the defendant to a prison term, to run concurrently with another sentence being served by the defendant. The issues raised by the defendant on his appeal from the judgment involve the court's instructions to the jury and certain rulings on evidence made in the course of the trial.

The evidence printed in the parties' briefs pursuant to §§ 631A and 632A of the Practice Book would permit the jury to find the following facts:[1]

---

[1] We have consulted the transcript of evidence on file to supplement or explain that printed. See *State* v. *Mullings*, 166 Conn. 268, 269, 348 A.2d 645; Practice Book § 628Q.

On September 23, 1974, a mittimus was issued by the Circuit Court in the third circuit at Danbury directing that the defendant be confined at the Connecticut correctional center, Bridgeport, in lieu of $1500 bail and that he be brought before the court on September 27, 1974. The charges on which the defendant was confined were burglary in the third degree and attempted larceny in the second degree. The burglary of which the defendant was accused occurred in Newtown on September 22, 1974. Detective Owen Carney of the Newtown police department was directed by his supervisor to transport the defendant from the correctional center to the court for appearance on September 27, 1974. When they arrived at approximately 11:30 a.m., Detective Carney placed the defendant in the lockup which was located in the courtroom. An accompanying Newtown officer delivered a paper from the correctional center to the clerk of the court showing the number of days that the defendant had been incarcerated. Just before noon, Detective Carney removed the defendant from the lockup so that he could speak with the public defender. To remove the defendant, Detective Carney had to obtain the key to the lockup from the court liaison officer, Sergeant Ray Horn of the Danbury police department. Detective Carney returned the defendant to the lockup a few minutes later. At that time, Carney apparently failed to lock the door and when he looked into the lockup between 12:05 and 12:10 p.m., the defendant was not there. The defendant was not present when the clerk called his case, and it was ascertained that he was not on the courthouse premises. Subsequently, on October 1, 1974, the defendant was apprehended by Detective Carney and others outside his mother's home in Hartford.

At the time of the defendant's arrest on the burglary charge in Newtown on September 22, 1974, he had given the police a fictitious name and a fictitious Hartford address.

At the trial, the defendant took the stand in his own defense. He did not dispute that he had, in fact, opened the unlocked door of the courtroom lockup, left the premises of the Circuit Court and fled to a nearby wooded area. He claimed, however, that his acts were not accompanied by the requisite intent or that they resulted from temporary insanity because he had been under the influence of what he termed "a flashback on LSD." The defendant further testified that prior to leaving the lockup on September 27, 1974, he had not used LSD for approximately three years, although he claimed to have experienced several "flashbacks" in the intervening period. In response to the question from his counsel, "Well, when you're under this influence, this flashback . . . do you know what you're doing?" The defendant replied, "No, you don't." The defendant admitted that he remembered speaking with his lawyer, being put back in the lockup, noticing that he was alone and that the cell door was not locked, walking out into the courtroom, and then running into the street and to a wooded area. He testified that at that point he realized what he had done and was even more afraid. He said that he knew the right thing to do was to go back but that instead he went home. The defendant claimed that he had been depressed and frightened upon being put in the lockup and that just before leaving the lockup his hearing and vision became distorted and he felt that he was having an "LSD flashback." No other evidence, of a medical nature or otherwise, was introduced in support of the defendant's claims

regarding his mental condition on the day in question. The state produced evidence from which the jury reasonably could have concluded that on September 27, 1974, right before the defendant's departure from the lockup and his claimed "flashback," he appeared physically healthy, did not appear excited or emotionally upset, and had engaged in coherent conversations.

Section 53a-171 of the General Statutes provides in its entirety: "(a) A person is guilty of escape from custody if he escapes from custody. (b) If a person has been arrested for, charged with or convicted of a felony, escape from such custody is a class C felony, otherwise, escape from custody is a class A misdemeanor." Although much of the trial was devoted to the defendant's claim that he was not in "custody" within the meaning of the statute at the time he left the courthouse, this argument has not been pursued on appeal. The defendant expressly abandons his exception predicated on the claim that the state had failed to establish the authority of a particular public servant to restrain him once he was delivered to the Danbury courthouse and concedes that there was a basis for his custody. The defendant does, however, press his objections to the court's instructions to the jury and to certain of its evidentiary rulings. We consider first the charge to the jury.

The defendant argues that the cumulative effect of the jury instructions was tantamount to a directed verdict of guilty and that specific instructions on insanity as a defense and on the element of intent were erroneous. In the course of explaining the nature of circumstantial evidence to the jury, the court reminded them that evidence had been

introduced, should they choose to accept it as the truth, that the defendant had been in custody pursuant to court order at the Danbury courthouse, was later found to be missing, and there was no evidence in the case of his authorized release or discharge from custody. The court then asked the jury, "What inferences do you draw from that?" The jury were specifically instructed that the court was merely providing them with an illustration of the nature of circumstantial evidence which "may in your own discretion be used if it applies logically and reasonably and leads you to a reasonable inference." They were further cautioned: "Now, I'm not telling you what testimony and what evidence you should consider, and I don't mean by referring to this part of the evidence, that you emphasize this over the rest; but you take it into consideration with the rest of the evidence in the case." "The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result." *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645; *Siladi* v. *McNamara,* 164 Conn. 510, 515, 325 A.2d 277. It is well established that individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154; *State* v. *Ralls,* 167 Conn. 408, 422, 356 A.2d 147. Having reviewed the charge in its entirety, it does not appear that the court's comments were improper. "The court simply recited some of the evidence from which inferences could be drawn. Moreover . . . the evidence presented by the defendant was accurately summarized. Throughout the charge, the jury's role as the finders of fact was repeatedly emphasized. The court's comments

have not been shown to have been unfair or misleading in any way." *State* v. *Schoenbneelt,* 171 Conn. 119, 124, 368 A.2d 117. The defendant apparently also objects to the fact that after the second instance when the court reminded the jury that no evidence of lawful discharge or release from custody had been produced, it instructed them that they must find the defendant guilty as a matter of law if they found that he had escaped while charged with burglary in the third degree. Contrary to the defendant's assertion, the court's comments did not amount to a "pronouncement of guilt as a matter of law." The court was merely stating the import of § 53a-171 of the General Statutes. If implicit in its comments was a recognition that the case against the defendant was a substantial one, it was not an abuse of discretion in the light of the facts of this case and the charge read as a whole. Under similar circumstances, where the facts were largely undisputed, where the defendant admitted the acts charged, and where the only substantial issue was one of intent, this court held that the trial court did not exceed its wide discretion to comment on the evidence, or lack thereof, when it expressed the opinion that the state had produced evidence of a very strong nature in support of the charge. *State* v. *Searles,* 113 Conn. 247, 257–58, 155 A. 213; see *State* v. *Mullings,* supra, 274. The court charged the jury that the state had the burden of proving the defendant guilty beyond a reasonable doubt, that until this was done the defendant was presumed innocent, and that there was no burden on the accused to prove himself innocent. It thoroughly summarized the only evidence presented by the defense, which was the defendant's testimony. The court may have devoted more time to a review of the state's evidence

than of the defendant's evidence, but it "specifically alluded to facts tending to support the [defendant's] essential claims of proof. The court's summary, in short, did not 'sink out of view' the claims or evidence on the [defendant's] side. See *State* v. *Rome,* 64 Conn. 329, 334, 30 A. 57." *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 593, 356 A.2d 873.

The defendant next objected to the portions of the court's charge dealing with the issue of the defendant's alleged insanity on the date of his escape. Until substantial evidence tending to prove insanity comes into the case, the state is entitled to rely on the presumption that all persons accused of crime are sane. *State* v. *Conte,* 157 Conn. 209, 212, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428. It is significant that although the defendant had filed an insanity defense, he did not request the court to deliver an instruction concerning insanity. His two requests to charge dealt only with the legal effect of intoxication and with intent as an element of the offense charged. The court, however, did comment on insanity in its instructions, explaining that it was a "serious defense," that "substantial, credible evidence" was necessary to raise it, but that the evidence produced by the defendant was "minimal." The court concluded its comments on insanity by saying: "Now, in the opinion of the Court, I don't think there was substantial evidence of the defense of insanity offered to raise the defense and put a burden on the State to do anything about it or counteract it in any way." When the defendant's counsel took exception to this portion of the charge, the court replied that the defense of insanity did not belong in the case at all and that counsel had been informed of this. The court explained that it had mentioned insanity to

the jury merely because it was brought up in evidence and the court "thought the jury should know what we were talking about, and that is all." Whether there was substantial evidence of insanity so as to place that issue in the case depends on whether "there was evidence sufficient, if credited, to raise a reasonable doubt as to the sanity of the defendant at the time" of the proscribed conduct. *State* v. *Conte,* supra, 213. In the terms of the statute, there would have to be a reasonable doubt that the defendant was not sane in that "as a result of mental disease or defect [he] lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." General Statutes § 53a-13. The defendant's claims of proof in this regard were meager, to say the least. Compare cases in annot., 73 A.L.R.3d 16. There was barely any evidence to explain the nature and effects of an "LSD flashback," merely the defendant's testimony that when he was put back in the lockup after talking with his attorney his hearing and vision became "distorted." Such sensory disturbance apparently did not in any way affect his ability to recall virtually all that happened, including the fact that he was alone in the cell with the door unlocked. Although the defendant's counsel persisted, at the trial and in his brief, in referring to the claimed "flashback" as a "blackout," perhaps seeking to suggest that the defendant acted as an automaton; see LaFave & Scott, Criminal Law § 44; 21 Am. Jur. 2d, Criminal Law, § 29; the defendant never used such a description and his own testimony does not support this inference that a "flashback" is a state of unconsciousness: "I started to realize. I never was unconscious, not that I was aware of. But, I started

to realize what I had done." No expert testimony was offered to explain the effects of an "LSD flashback" in terms of the statutory criteria for legal insanity, although generally it can be said that the sanity of an accused is a matter best determined by medical experts, preferably trained in psychiatry. 21 Am. Jur. 2d, Criminal Law, § 48.[2] On the record in this case, we do not believe that the court erred in concluding that the defendant's testimony fell short of evidence of legal insanity under our rule and that it was inadequate to raise the reasonable doubt as to the defendant's sanity necessary to warrant submitting the issue to the jury. See *State* v. *Conte,* 157 Conn. 209, 214–15, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428. It is unfortunate that the court confused matters by stating its conclusion on the insanity defense to the jury while subsequently using contradictory language in reminding the jury that "as I said earlier, your recollection of the evidence controls, and not mine." It was erroneous to instruct the jury in this manner but the error, if anything, was unduly favorable to the accused. See *State* v. *Tobin,* 90 Conn. 58, 63, 96 A. 312. Under the circumstances of this case, the instructions were not harmful and, therefore, did not constitute reversible error. *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288. "To require reversal, error in a charge must be prejudicial." *Dinda* v. *Sirois,* 166 Conn. 68, 74, 347 A.2d 75.

---

[2] It is in recognition of this fact that statutes have been enacted in many jurisdictions providing for medical examination of an accused when a question has arisen as to his sanity. See 21 Am. Jur. 2d, Criminal Law, § 48; Practice Book § 2171 (effective October 1, 1976).

The defendant pursues his exception taken when the court refused his request that the jury be charged on the legal effect of intoxication. Related to this argument is his claim that the court erred in its charge pertaining to the element of intent necessary for a conviction of escape under General Statutes § 53a-171. The defendant essentially argues that the element of specific intent should be read into § 53a-171. That statute is a criminal enactment which on its face is silent with respect to intent. It designates no special mental state or specific intent as set out in General Statutes § 53a-5.[3] "In determining which of these crimes requires proof of a general intent and which requires proof of a specific intent, the language chosen by the legislature in enacting a particular statute is significant. When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite general intent for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a specific intent." *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240. The defendant nevertheless seeks to read specific intent into § 53a-171 by citing *State* v.

---

[3] "[General Statutes] Sec. 53a-5. CRIMINAL LIABILITY; MENTAL STATE REQUIRED. When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally,' 'knowingly,' 'recklessly' or 'criminal negligence,' or by use of terms, such as 'with intent to defraud' and 'knowing it to be false,' describing a specific kind of intent or knowledge. . . ."

*Blyden,* 165 Conn. 522, 338 A.2d 484. In *Blyden,* this court construed (p. 530) General Statutes § 53-162 (Rev. to 1968), prohibiting escape from custody while being transported to or from a correctional institution, as being merely a codification of the common-law offense of escape containing identical essential elements: the legal custody of the escaper, the escape and the occurrence taking place outside a facility of incarceration. Although § 53a-171 no longer requires that the escape from custody be while the accused is in transit outside a facility of incarceration, "[t]here is no additional element in the statutory prohibition." Ibid. The common-law offense of escape required no specific intent, notwithstanding the defendant's misplaced reliance on ambiguous dicta in *Riley* v. *State,* 16 Conn. 47, 51. In *Riley,* the court cites (p. 51) with approval ancient English precedent to the effect that the common-law offense had no specific intent requirement: "It was long ago decided, by the court of King's Bench in England, 'that although a prisoner departs from prison, with the keeper's license, yet it is an offence, as well punishable in the prisoner as in the keeper.' *Hobert* and *Stroud's* case, Cro. Car. 209. That doctrine has never since been overruled but often recognized as law. *State* v. *Doud,* 7 Conn. R. 384." There is substantial current authority in accordance with the proposition that no specific intent is necessary to commit the crime of escape: "The ordinary intent required to constitute the offense of escape . . . is the intent to do the act voluntarily which results in the unlawful liberation from lawful custody." 3 Wharton, Criminal Law and Procedure (12th Ed., 1957 and 1977 Sup.), § 1372, and cases cited therein. In the present case, the defendant was not entitled to the

requested charge on intoxication because it would have been relevant only to show an absence of specific intent, which was not an element in the offense charged. General Statutes § 53a-7; *State* v. *Bitting,* supra, 7; *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65; *State* v. *Gaetano,* 96 Conn. 306, 317, 114 A. 82; see generally annot., 73 A.L.R.3d 16, § 4 (a). Furthermore, the court was well within its discretion in reaching its conclusion that the evidence simply did not warrant sending the issue to the jury, particularly in view of the speculative nature of the voluntary drug intoxication defense, and widespread judicial skepticism when faced with it. See generally annot., 73 A.L.R.3d, supra.

On the whole, we find no reversible error in the court's charge pertaining to intent. We note that the defendant's request to charge on the element of intent did not mention specific intent, and in taking his exceptions to the charge the defense counsel conceded to the trial court that only general, and not specific, intent was required. The court erred once in stating that the jury only had to find that the defendant "walked out," but this was amply counteracted by the instances in which it defined escape in terms of voluntariness, instructed the jury that they must find that the defendant intended to walk out of the enclosure, and explained the general intent required. In addition, the court correctly instructed the jury that a person is presumed to intend the natural consequences of his acts, and that his intention can be inferred from his conduct. *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; see 22 C.J.S., Criminal Law, § 33. The defendant appears to focus the act of the escape entirely on the moment he stepped out of the lockup into the courtroom. The policy behind prohibiting an

accused's voluntary departure from custody justifies a broader interpretation than that, however, and other courts have accordingly allowed some latitude in finding a concurrence of act and intent. See, e.g., *Chandler* v. *United States,* 378 F.2d 906 (9th Cir.), in which the court held that if the defendants left custody inadvertently while intoxicated, they would still be guilty of the crime of escape if they later seized the opportunity to maintain their liberated status despite the tardy formulation of the idea; *United States* v. *Woodring,* 464 F.2d 1248 (10th Cir.), holding the defendant guilty of escape notwithstanding the late formation of the idea if he seized the opportunity and did not return. In the present case, the defendant admitted that almost immediately after running from the courtroom he realized what he had done and knew that the right thing to do was to return, which he did not do. In the light of the circumstances of this case and the overall content of the instructions, the jury were adequately guided in making the necessary determination that there had been a voluntary act resulting in unlawful liberation from custody. Despite flaws in the charge, there was realistically no reasonable probability or possibility of prejudice to the defendant, which is the requirement for a reversal. *State* v. *Ruiz,* 171 Conn. 264, 273, 368 A.2d 222.

Finally, the defendant claims certain errors in evidentiary rulings made during the course of the trial. Through the direct testimony of the Circuit Court clerk, the state offered evidence of the pendency of the charge of burglary in the third degree against the defendant on the relevant date. This evidence was material and relevant as an element of the crime charged. General Statutes

§ 53a-171 (b). The defendant makes no claim to the contrary and states that the pendency of this charge was a "fact never contested." After the state offered this evidence, it pursued the subject no further at that time. On cross-examination, and over the state's objection on the ground of irrelevancy, the defendant was permitted to elicit the information that the burglary charge was nolled on October 15, 1974, in the Circuit Court. Thus, the disposition of the underlying felony charge was first brought to the jury's attention on the defendant's initiative. This court has held such evidence to have been properly *excluded* in a trial on the charge of escape: "The evidence sought was of such slight and inconsequential relevance that at best it would serve more to divert attention from important evidence than to elucidate vital issues. The ruling . . . was a proper application of the generally accepted law in such cases. See 27 Am. Jur. 2d, Escape, Prison Breaking and Rescue, § 14, p. 857; note, 70 A.L.R.2d 1430, 1449-50." *State* v. *Blyden,* 165 Conn. 522, 531, 338 A.2d 484. In the present case, it was only after the evidence of disposition had been admitted that the state attempted to counteract its distracting, prejudicial effect by introducing evidence to rebut any false impression the jury may have gotten that the Circuit Court nolle was a final disposition indicating the defendant's lack of guilt. The state was allowed to call an assistant clerk of the Superior Court to establish that the reason for the nolle was that a bench warrant had been executed in Superior Court, where the action on the burglary charge was pending at the time of the defendant's trial for escape. The defendant objected to this evidence on the ground of irrelevancy. It is of course a settled rule that

the trial court has a very broad discretion in ruling on the relevancy of evidence. *State* v. *Jones,* 166 Conn. 620, 624, 353 A.2d 764. The court should properly have excluded the initial testimony concerning the Circuit Court disposition of the burglary charge, but once it had erroneously permitted the defendant to "open the door" on this evidence, we cannot say that the court abused its discretion in allowing the state to pursue the inquiry on this matter begun by the defendant, so that the entire transaction might be presented to the jury. Most courts say generally that one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening, particularly where, as in the present case, the opponent is likely to be prejudiced unless he can meet the evidence. McCormick, Evidence (2d Ed.) § 57; 1 Wigmore, Evidence (3d Ed.) § 15. See *State* v. *Grayton,* 163 Conn. 104, 109–110, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; *State* v. *Kurz,* 131 Conn. 54, 63, 37 A.2d 808.

In addition to permitting evidence as to the pendency of the burglary charge on the date of the escape charged in the information, the court also allowed some evidence as to its substance. We cannot agree with the defendant's claim that this second ruling on evidence was also in error because "what the court did was to permit the jury to convict the defendant of the crime of escape on evidence that he had attempted to 'crack' a safe five days earlier." The defendant testified on direct examination that he walked out of the courtroom lockup under the influence of an "LSD flashback." Thereafter, when cross-examined by the state, he

admitted that he had been convicted of a burglary in 1971. No issue is raised with respect to the admission in evidence of this conviction. On redirect examination, the defendant testified that the 1971 burglary was of a drugstore and was motivated by the defendant's desire to obtain drugs. In addition, in response to questioning, the defendant testified rather fully as to events in his life from 1971 up to the time of his arrest for the felony underlying his escape charge, the Newtown burglary on September 22, 1974. His testimony included a recital of his various experiences with jobs and particularly dwelt on his earlier problems with drug abuse and what he characterized as several "LSD flashbacks" during the three years preceding his Newtown arrest. The defendant's counsel argued for the admissibility of all this testimony on the ground that he was rehabilitating the defendant's credibility following the introduction of the prior felony conviction. Under recross-examination, over a defense objection, the state was permitted to ask whether the 1974 burglary charge concerned a drugstore, to which the defendant replied that it did not. This was not error because the defense can be said to have opened the door to that inquiry by its explanation of the 1971 burglary. *State* v. *Malley,* 167 Conn. 379, 384, 355 A.2d 292; see *Akers* v. *Singer,* 158 Conn. 29, 36, 255 A.2d 858; *Fahey* v. *Clark,* 125 Conn. 44, 47, 3 A.2d 313. The state also elicited an admission from the defendant that the 1974 charge had to do with an attempted safecracking. No objection was made to this latter question nor was an exception taken; thus the admission of that evidence will not be considered as a ground of

error in this appeal. Practice Book § 226; *State* v. *Ralls*, 167 Conn. 408, 426, 356 A.2d 147; *State* v. *Avila*, 166 Conn. 569, 577, 353 A.2d 776.

There is no error.

In this opinion the other judges concurred.