[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Carolyn Hanes, appeals from the decision of the defendant, the Bridgeport Board of Education, terminating the plaintiff's teaching contract. The Board of Education (Board) acted pursuant to General Statutes § 10-151(d) of the "Teachers' Tenure Act." The plaintiff appeals this decision pursuant to § 10-151(e). CT Page 10712
On or about October 24, 1994, 1994, the defendant informed the plaintiff that the Board of Education (Board) had voted to consider the termination of the plaintiff's teaching position. In a letter addressed to the plaintiff's attorney, the Board cited "moral misconduct and other due and sufficient cause" as the reason underlying the termination. Pursuant to the plaintiff's request, and following the procedures of General Statutes §10-151(d), an evidentiary hearing was held before a three-person panel. Following the evidentiary hearings, the panel released its findings and recommendations. The Board of Education adopted all the findings and recommendations of the panel and voted unanimously to terminate the plaintiff's employment effective November 20, 1995. On November 20, 1995, the Board informed the plaintiff of the Board's decision to terminate the plaintiff for "moral misconduct and other due and sufficient cause."
By complaint dated December 11, 1995, the plaintiff filed the present appeal. The specified grounds for the appeal are that: 1) the findings of the panel are not supported by the record as a whole, nor is there substantial and non-circumstantial evidence which proved the findings by a preponderance of the evidence; 2) the plaintiff was prevented from investigating her case; 3) the plaintiff was not given the opportunity to investigate the conduct of fellow teachers; 4) the Board of Education did not review and consider the findings of the panel and furthermore, the Board violated its duty to investigate; and 5) the panel did not consider or allow evidence regarding the involvement of other CEA and BEA[1] members. Pursuant to these grounds, the plaintiff asked that the court hear further testimony from additional witnesses. On December 10, 1996, the plaintiff sought leave of the court to file an amended complaint, to which the defendant objected. The court, Melville, J., sustained the defendant's objection. On March 31, 1997, the plaintiff filed her brief in support of the administrative appeal. The defendant filed its own brief on June 16, 1997. Oral argument was presented to the court on May 18, 1998.
Pursuant to General Statutes § 10-151(e), any "teacher aggrieved by the decision of a board of education . . . may appeal therefrom, within thirty days of such decision, to the Superior Court."
"When considering termination of a tenured teacher's employment contract, a school board acts like an administrative agency, in a quasi-judicial capacity." (Internal quotation marks CT Page 10713 omitted.) Tomlinson v. Board of Education, 226 Conn. 704, 712,629 A.2d 333 (1993). "Appeals from administrative agencies exist only under statutory authority. A statutory right of appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Searles v. WestHartford Board of Education, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 384053 (July 29, 1991, Purtill, J.), aff'd, 40 Conn. App. 901, 668 A.2d 399, cert. denied, 236 Conn. 917, 673 A.2d 1143 (1996).
 A. AGGRIEVEMENT
"Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." Light Rigging Co. v. Department of PublicUtility Control, 219 Conn. 168, 172, 592 A.2d 386 (1991). "[T]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . ." (Internal quotation marks omitted.) Id., 173. Finally, "aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Id.
A tenured teacher's right to continued employment implicates a property interest. Rado v. Board of Education, 216 Conn. 541,555, 583 A.2d 102 (1990). In the present case, the plaintiff has alleged that her employment as a tenured teacher was terminated by the decision of the Board of Education. Therefore, the plaintiff is sufficiently aggrieved.
 B. TIMELINESS SERVICE OF PROCESS
General Statutes § 10-151(e) provides that "[a]ny teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision, to the Superior Court." CT Page 10714
The Board terminated the plaintiff's employment on November 20, 1995. The defendant was served on December 12, 1995 and the appeal was filed December 15, 1995. The appeal, therefore, was timely served.
"[O]n appeal from a school board decision, the proper scope of review is that applicable to administrative appeals."Tomlinson v. Board of Education, supra, 226 Conn. 712. "The court, upon such appeal and hearing thereon, may affirm or reverse the decision appealed from in accordance with subsection (j) of section 4-183." General Statutes § 10-151(e). "General Statutes § 4-183(j) . . . permits modification or reversal of an agency's decision if substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tomlinson v. Board ofEducation, supra, 226 Conn. 712-13.
"When considering termination of a tenured teacher's employment contract, a school board acts, like an administrative agency, in a quasi-judicial capacity." (Internal quotation marks omitted.) Barnett v. Board of Education, 232 Conn. 198, 206,654 A.2d 720 (1995). "A school board has discretion to accept or reject a recommendation from an impartial hearing panel, though it is bound by the panel's findings of fact unless unsupported by the evidence. . . . The board is bound by the panel's findings of fact, but not by its legal conclusions or by its recommendations." (Citations omitted; internal quotation marks omitted.) Id.
"Judicial review of the school board's administrative decision follows established principles of administrative law. The court's ultimate duty is only to decide whether, in light of the evidence, the [board] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts . . ." (Citations omitted; internal quotation CT Page 10715 marks omitted.) Sekor v. Board of Education of the Town ofRidgefield, 240 Conn. 119, 125, 689 A.2d 1112 (1997).
Of the five issues presented in the appeal, the plaintiff has only addressed two in her brief: the applicability of the amended § 10-151 to the present appeal, and whether the board's decision is reflected in the record. The remaining issues, therefore, are considered waived. Bridgeport Hospital v.Commission on Human Rights Opportunities, 232 Conn. 91, 115,653 A.2d 782 (1995).
 A. The Applicability of General Statutes (Rev. to 1995) § 10-151.
The plaintiff argues that she has new evidence which allegedly clears her from any wrongdoing. The plaintiff argues that she is entitled to present this new evidence to the court as a matter of right.
The plaintiff's argument is based on the fact that such a right was explicitly provided for in § 10-151(f)[2] prior to the amendment, in 1995, which eliminated the right and relabeled the section § 10-151(e). The hearings before the board of education were conducted under the guidelines of the pre-1995 amendment, therefore, the plaintiff maintains that the present appeals process must be governed by exactly the same statute that was used in the hearing process itself, even though the board's decision was made after § 10-151(e) became effective. Thus, the plaintiff argues that § 10-151(e) may apply only prospectively and, as a result, the plaintiff may present new evidence to the court during the present appeal from the board of education's decision.
In opposition to the plaintiff's argument, the defendant maintains that the amendments to the statute in question were solely of a procedural nature. Accordingly, the defendant argues that § 10-151(e) applies retroactively.
Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. State v. Magnano, 204 Conn. 259, 284, 528 A.2d 760
(1987). "In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3. . ." Coley v. CamdenAssociates, Inc., 243 Conn. 311, 315, 702 A.2d 1180 (1997). That statute provides: "No provision of the general statutes, not CT Page 10716 previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect." General Statutes §55-3. "The `obligations' referred to in the statute are those of substantive law. . . Thus we have uniformly interpreted §55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . ." (Citations omitted; emphasis in original.) Coley v.Camden Associates, Inc., supra, 243 Conn. 315.
The Connecticut Supreme Court has "consistently expressed reluctance to construe statutes retroactively where the statutes [e]ffect substantial changes in the law, unless the legislative intent clearly and unequivocally appears otherwise. . ." (Citations omitted; internal quotation marks omitted.) Andersonv. Schieffer, 35 Conn. App. 31, 39, 645 A.2d 549 (1994). Legislation which limits or increases statutory liability has generally been held to be substantive in nature and thus applies prospectively only. Id. Where, however, the amendment is procedural in impact, is intended to clarify the original intent of an earlier statute, or specifically contains such language, the legislation will be applied retroactively. Id., 40. "Procedural statutes and rules of practice ordinarily apply retroactively to all actions whether pending or not at the time the statute . . . became effective, in the absence of any expressed intent to the contrary." Mulrooney v. Wambolt,215 Conn. 211, 216-17, 575 A.2d 996 (1990).
The interpretation of a particular statute is a question of statutory construction. When construing a statute, the fundamental objective of the court is "to ascertain and give effect to the apparent intent of the legislature. . . In seeking to discern that intent, [the court looks] to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." State v. Burns, 236 Conn. 18, 22-23,670 A.2d 851 (1996).
On its face, § 10-151(e) provides no indication as to whether the amended statute was intended to be applied retroactively or prospectively. Thus, it is necessary to look at the legislative history for any suggestion as to how the amended § 10-151(e) should be applied. CT Page 10717
A review of the legislative history indicates that Public Acts 1995, 95-58, which amended § 10-151, was viewed by the legislators as "technical in nature." 38 H.R. Proc., Pt. 6, 1995 Sess., p. 2255, remarks of Rep. Staples. As evidenced by the statement of Rep. Staples that "those who are subject to dismissal . . . are also afforded all their due process rights," the legislative history does not reveal that the legislators envisioned that substantive rights would be affected. Id., p. 2256. Rather, the legislative history suggests that the legislators were generally concerned with reducing the amount of time spent during the termination process under current law. "Specifically, current tenure law provides for a dismissal process with multiple opportunities for extensions of time. At various points in that process, this legislation would eliminate the opportunity for unlimited extensions of time. . ." Id.
The legislative history of the amendment reveals that the legislature was, in part, motivated to act in an attempt to shorten the process which accompanied the board's decision to terminate a tenured teacher's contract. In particular, the legislative history shows that the legislators were concerned with overburdening the resources of the local school board as well as needlessly prolonging the assuredly difficult time for both the teacher, the board, and especially the affected school. See 38 H.R. Proc., supra, p. 2259, Comments of Rep. Cafero ("one of the most attractive aspects of the bill is under our current law in those rare instances, but unfortunately sometimes necessary instances when a board is faced with a decision to terminate a teacher. Under our current law, that process has been averaging about 18 months to two and one-half years. Not only putting the teacher in question through a lot of agony and worry about their future, but also putting a board of education in severe financial risk . . . there are times where you had to literally balance the fiscal impact of even entering into the termination process with what was the truly the right thing to do for the school system"). See also 38 H.R. Proc., supra, p. 2257, remarks of Rep. Staples ("I think this is an example where you have a bipartisan ability to reach what is really at issue on a piece of legislation and that is to save funds for the boards of education who are subject to the dismissal process of a member of their staff, but also preserving by not altering the elements for dismissal, and not altering the fundamental rights of due process due for a teacher under tenure, the rights of individuals who are subject to that process"). CT Page 10718
Excerpts from the legislative debate, as evidenced by the above-quoted remarks, give credence to the general statements that the 1995 amendment to § 10-151 is not substantive in nature, but rather a technical amendment that "just speeds up the process" afforded under § 10-151. Id., p. 2256. Though the legislative history does not directly address the portion of the amendment in dispute (eliminating the presentation of new evidence on appeal), the amendments must be read in the context of the legislative history and statute as a whole. "[A] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." State v. Spears,234 Conn. 78, 91, 622 A.2d 80, cert. denied, ___ U.S. ___, 116 S.Ct. 565
(1995).
Eliminating the ability to present new evidence on appeal is consistent with the underlying motives of the legislature in enacting amendments that would shorten the process of a teacher being terminated in order to lessen the financial burden on the involved parties. Moreover, the elimination of presenting new evidence on appeal does not appear to lessen the due process rights of the interested parties. See comments of Rep. Staples,supra. In the context of the changes § 10-151, there is sufficient evidence to rebut the general presumption that amendments to a statute affect substantive rights and are to be applied prospectively only. See Hall v. Gilbert BennettManufacturing Co,. Inc., 241 Conn. 282, 305, 695 A.2d 1051
(1997). After July 1, 1995, the amended § 10-151 properly set out the procedures for appealing the decision of the board even though the hearings in the present case were initiated under the pre-amended statute. As such, the plaintiff does not have a statutory right to present new evidence on appeal.
Defining the rights of appeal according to the statute in effect at the time of appeal, and not the date of the injury, is not uncommon. See Chieppo v. Robert E. McMichael, Inc.,169 Conn. 646, 650, 363 A.2d 1085 (1975) (in worker's compensation case, "the method of appeal from the compensation commissioner . . . is not controlled by the statute in effect on the day of the injury. The focus . . . [is] upon the duties and powers of the compensation commissioner and the court to which the appeal is taken"). See also Coley v. Camden Associates, Inc., supra,243 Conn. 322. Even if the date of injury precedes the effective date of the relevant amendment concerning the process of appeal, then, as in the present case, the appropriate statute is the one CT Page 10719 effective as of the date of appeal. See Shearson AmericanExpress, Inc. v. Banking Commissioner, 39 Conn. Sup. 462, 466,466 A.2d 800 (1983) ("[t]he answer to this claim is that the statute was not applied retroactively. Although the original petition before the defendant was filed prior to July 1, 1982, the effective date of the amendments to § 4-176, the defendant's ruling and the plaintiff's appeal therefrom were filed after that date. Therefore, the trial court correctly held that § 4-176, as amended, applied to the plaintiff's administrative appeal and properly granted the motion to dismiss").
In the present case, although the termination proceedings were initiated in December of 1994, the decision of the board and the appeal therefrom (November 20, 1995 and December 11, 1995, respectively) came after the amended § 10-151 was already in effect (June 1, 1995). As such, the process of appeal to be followed by the plaintiff was spelled out in § 10-151, as amended. This amended statute did not provide for the presentation of new evidence on appeal and, the plaintiff should not be allowed to introduce any new evidence at this time.
The plaintiff argues that the legal strategy during the hearing was based on the fact that the plaintiff would be able to provide additional evidence, if necessary, during appeal, and, therefore, it is only just and equitable that the plaintiff should now be allowed to introduce new evidence. Such an argument is without merit. First, "courts have no general equitable jurisdiction to oversee the decisions of school hearing panels and school boards." Sekor v. Board of Education of the Town ofRidgefield, supra, 240 Conn. 131 ("the trial court could not have invoked such equitable principles, in light of the limited scope of appellate review of an administrative decision under our established case law"). Second, the court should not condone the legal strategy of withholding possibly helpful evidence based on the expectation that such evidence can be introduced on appeal. See Suffield Bank v. Berman, 228 Conn. 766, 785, 639 A.2d 1033
(the "court has expressly decried such `trial by ambush' techniques in the past"). Furthermore, the argument of professed reliance on legal strategy is inconsistent with the plaintiff's claim that the new evidence was procured following the hearing.
Therefore, the plaintiff is not entitled to present additional evidence during the present appeal. As this court cannot hear additional evidence, the court must review the record CT Page 10720 to see if the record provides a reasonable and logical basis for the board's decision.
 B. Whether the record supports the decision of the board.
The reviewing court is limited to determining whether the actions of the board were based on substantial evidence in the record. Barnett v. Board of Education, supra, 232 Conn. 211. The so-called substantial evidence rule "is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . ." (Citations omitted; internal quotation marks omitted.) Id.
In the present case, the board of education voted to terminate the plaintiff's employment after the three-member panel recommended that the plaintiff be terminated as a teacher for engaging in "moral misconduct, specifically cheating, willful falsification of state-mandated test results, and other acts of dishonesty in the course of her employment as a teacher for the Bridgeport Public Schools."[3] The panel also found "other due and sufficient cause" to terminate the plaintiff's contract of employment. Specifically, the panel concluded that the plaintiff "administered the 8th grade Connecticut Mastery Test (DRP section) at Thomas Hooker School during the fall of 1994 and the fall of 1993, and filled in answers for students who had not completed the DRP portion of said tests; erased or changed incorrect student answers on said tests; or otherwise tampered CT Page 10721 with student answer pamphlets."
The plaintiff argues that the record does not support these conclusions. For one, the plaintiff argues that several of the panel's "findings of fact" are legal conclusions not supported by the evidence of the record. Moreover, the plaintiff claims that while the findings of fact show that some sort of cheating may have occurred on the Connecticut Mastery test, the record does not support a conclusion that the plaintiff was actively or passively involved in the cheating herself.
In the present case, the record clearly demonstrates that some sort of cheating took place. Several witnesses testified to the fact that the answer sheets exhibited signs of tampering and that the results of the tests in both 1993 and 1994 were highly indicative of cheating on the exams. The plaintiff, in her testimony, thought that a similar conclusion had to be reached.
The panel concluded that the plaintiff perpetrated these "undisputable alterations and tampering." Although the panel found that the evidence against the plaintiff was circumstantial in nature, the panel concluded that this evidence was, nonetheless, "persuasive." The circumstantial evidence discussed by the panel and adopted by the board seems to fall into three categories.
First, the panel concluded that the alterations and tampering on the exams demonstrated a consistent, ongoing scheme to enhance the results of the exam. Such a scheme, according to the panel, was beyond the abilities of the students themselves and thus could only occur as a result of the plaintiff's involvement. The panel found that the plaintiff administered the altered portions of the exam in both 1993 and 1994 and that during these years, the testing materials were within her possession and control for most of the testing period. The panel concluded that, as a result, the plaintiff had the time and opportunity to prepare an answer key and ultimately alter the exams.
Second, the panel concluded that the plaintiff had motive to enhance the exams. The panel determined that the plaintiff was actively pursuing an administrative position within the school system and that high scores on the exam would strengthen the plaintiff's position for such a promotion.
Finally, the panel concluded that the plaintiff's conduct CT Page 10722 during the ongoing investigation into the alterations constituted evidence of the plaintiff's "consciousness of guilt." The panel found that, despite promises of "confidentiality" to her superiors, the plaintiff, nonetheless, actively questioned students collectively and individually. The panel concluded that such conduct constituted an attempt at intimidating the students "from coming forward."
The panel found that these findings of circumstantial evidence were sufficient to establish that the plaintiff was responsible for the alterations on the exam. These findings of circumstantial evidence were furthered buttressed by the panel's finding that the plaintiff was less credible than certain witnesses of the board and that the plaintiff did not refute the evidence presented by the board.
In general, it is within the province of the trier of fact to draw reasonable inferences from the facts proven. State v.Little, 194 Conn. 665, 673, 485 A.2d 913 (1984). The trier of fact, however, may not resort to speculation and conjecture. Rather, any inference drawn must be rational and founded on the evidence. Id. Proof by circumstantial evidence is supported where rational minds can reasonably and logically draw the necessary inferences. Aksomitas v. Aksomitas, 205 Conn. 93, 100-01,529 A.2d 1314 (1987). An administrative agency is entitled to take into account all evidence before it, including circumstantial evidence. Common Council of Middletown v. F.O.I.C., Superior Court, judicial district of Middlesex at Middletown, Docket No. 074406 (January 31, 1996) (Maloney, J.).
The record reflects that there is sufficient evidence to support the panel's findings of fact and the ultimate conclusions and inferences drawn from these findings by the panel. A review of the record demonstrates that the record supports a finding of the following facts.
The record[4] reflects that both the 1993 and 1994 tests were tampered with. A number of students who took the test in 1994 claimed that they did not finish the exam in time, though subsequent examination of the exams revealed that nearly half of those students did have completed exams. Both the plaintiff and a student testified that one of the students, Kassie Mastro, who reportedly did not finish the exam, did finish. Kassie Mastro, however, testified that she did not finish the exam. CT Page 10723
After the allegations of tampering on the 1994 exam were revealed, the eighth grade students at Thomas Hooker School were retested with an equivalent exam. During the retest, more students did complete the exam. All the students whose tests were allegedly tampered with scored significantly lower on the retake. Other evidence that a number of exams were tampered with includes indications of unusual answer patterns, different shadings and consistent erasures. The rankings for the Degrees of Power Reading section achieved by students at Thomas Hooker School are highly inconsistent with scores achieved by these students in other fields on the exam.
The record does not contain any actual evidence of students cheating, but rather it contains the testimony of several students who explicitly deny that they cheated. The tests contained no answer key, nor were the teachers given one. While an extremely bright eight grade student may have answered all the questions correctly, one witness, Mrs. Rabinowitz, the testing program coordinator for the Bridgeport school system, testified that she needed help in creating the correct answer sheet. The students at the hearing testified that the plaintiff did not provide them with answers.
The exam was to be administered by the plaintiff and George Fox, a math teacher.[5] Only those two individuals had access to the exams. No other teacher had reason to seek access to the exams. The plaintiff administered the allegedly tampered Degree of Reading Power section on September 23, 1994. The exams were kept in a file cabinet in the classroom of the plaintiff. The file cabinet did not lock. The door to the plaintiff's classroom did have several panes of glass missing. An individual could have opened the locks on the door through the window if he so chose. While the plaintiff did report that a desk was broken into, there were no other reports of burglary in the school.
The plaintiff was actively seeking an administrative position. Administrative positions in the Bridgeport school system were highly competitive and hard to come by. Positions were filled from a pool of applicants of interested teachers. The plaintiff was not aware how the interested teachers were ranked. Previous evaluations of the plaintiff were complimentary to the plaintiff.
The statewide exam was composed of a language section (consisting of degrees of reading power, listening and written CT Page 10724 composition) and math. The plaintiff was the sole teacher who taught "language arts" at Thomas Hooker School. Language arts encompasses reading, writing and speaking. Favorable results on the statewide exam drew the attention of the media, administrators, teachers, and parents in the community. One witness testified that, when successful scores were achieved on the 1993 exam, the plaintiff made it a point to post and highlight the results for all to see. However, the plaintiff admitted only to posting results of the math and reading parts of the exam, and not the other portions. The salary of the plaintiff was in no way dependent on the results of the exam.
The record contains contradictory evidence as to the actions of the plaintiff during the initiation of the investigation into the exam alterations. While there is evidence that the plaintiff agreed to keep the investigation into the alleged alterations confidential, the record indicates different versions of what transpired after this agreement was made. One version, gathered from the testimony of Robin Mastro, the parent who reported that she suspected some testing irregularities to the school principal, and Kassie Mastro, the student who first noticed testing inconsistencies, indicates that the plaintiff asked the students as a group if they knew what was going on. Then, the plaintiff asked Kassie Mastro, if she knew what was going on. The plaintiff then proceeded to confront Kassie's mother and allegedly stated that "some parent had stabbed her in the back concerning the Mastery tests, and that she would know in two weeks who that person was." The plaintiff's version of the events following the meeting in which she agreed to keep the investigatory matter confidential differs. According to the plaintiff, the investigation was already a well-known fact among fellow faculty members and school staff. Similarly, the plaintiff testified that it was the students who first asked the plaintiff why she didn't administer a part of the exam that day. These questions, in turn, prompted the plaintiff to ask the students if they knew anything that was going on. While the plaintiff did admit she met with Kassie Mastro individually, she denied meeting with her in an intimidating manner. The plaintiff also denied the alleged statement made to Robin Mastro and stated that she simply asked if Mrs. Mastro, who was very active in the school, had any idea what was going on.
Based on the facts, the record does support the findings and the conclusions reached by the panel and adopted by the board. "[T]he credibility of witnesses and the determination of factual CT Page 10725 issues are matters within the province of the administrative agency . . . An administrative agency is not required to believe any witness, even an expert . . . " (Citations omitted; internal quotation marks omitted.) Fleischman v. Board of Examiners inPodiatry, 22 Conn. App. 193, 197, 576 A.2d 1308 (1990). The board "exercises discretion in weighing evidence, judging credibility of witnesses, finding facts and making conclusions." Light v.Board of Education, 173 Conn. 35, 39, 364 A.2d 229 (1975). In the present case, the panel found the plaintiff to be less credible than other witnesses and based its findings largely on this determination. The court cannot challenge the findings of the panel, and ultimately the board, as to how the panel weighed the collective evidence before it.
Likewise, the court cannot retry the evidence in the record before it and substitute its judgment for that of the panel. Based on the evidence in the record, the conclusion reached by the panel could have flowed reasonably and logically from facts found by the panel. There is evidence in the record to suggest that the exams were tampered with and altered. There is also substantial evidence that the plaintiff had both the motive and the opportunity to perform these alterations. The record also reflects that the plaintiff, in spite of the agreement to keep the matter confidential, questioned students and the parent of the student who brought the initial allegation of tampering on the exam. The record further reflects that the possibility of other individuals altering and tampering with the exams were explored and rejected as implausible. The panel concluded that these findings, when combined, constituted sufficient evidence to indicate that the plaintiff was the individual who tampered with and altered the exams.
There is no direct evidence to implicate the plaintiff as the person responsible for altering the exams. Nonetheless, the record does contain substantial evidence to support the board's adoption of the panel's conclusion that the plaintiff engaged in acts of altering the answer sheets and tampering on the exam.
The plaintiff can not be allowed to introduce new evidence to the court during this appeal. General Statutes § 10-151(e) is a retroactive statute that eliminates the plaintiff's ability to introduce any further evidence at the present time. Since the plaintiff cannot introduce any new evidence, the court must review the record to see if it supports the decision of the Board. There is substantial evidence in the record to uphold the CT Page 10726 decision of the Board to terminate the plaintiff's teaching contract.
For the foregoing reasons, the plaintiff's appeal is dismissed.
STODOLINK, J.