[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
BENCH MEMORANDUM
Plaintiffs, Steven Levine and Seagrape Cafe, Inc. (Seagrape), appeal a decision of the defendant, Department of Liquor Control (Department), suspending plaintiffs' CT Page 1675 cafe liquor permit. The Department acted pursuant to General Statutes 30-55. The appeal is brought pursuant to General Statutes 4-183. See General Statutes 30-55,30-60.
The plaintiffs are the holders of a cafe liquor permit issued by the Department for premises located in Fairfield. On or about November 14, 1991, the Department alleged that on December 15, 1990, the plaintiffs violated General Statutes30-90 and Regulation of State Agencies 30-6-A24(c). Section 30-90 of the statutes provides, in relevant part, as follows:
 Any permittee who, by himself, his servant or agent, permits any minor or any person to whom the sale or gift of alcoholic liquor has been forbidden according to law to loiter on his premises where such liquor is kept for sale, or allows any minor to be in any room where alcoholic liquor is served at any bar, shall be subject to the penalties of section 30-113.
Section 30-6-A24 of the regulations is entitled "Conduct of permit premises", and subsection (c) provides:
 No permittee or his servant or agent shall conduct the permit premises in such a manner as to allow an intoxicated person or persons to loiter thereon.
Following a hearing, the Department found that the plaintiffs had committed the following violations:
 Charge #2. On December 15, 1990 in the Town of Fairfield you violated Section 30-90 of the General Statutes: in that you did by yourself, servant or agent permit a minor, MARTIN PIERCE, to loiter upon the permit premises and you did allow a minor, MARTIN PIERCE, unaccompanied by parent, guardian or spouse to be in a room where alcoholic liquor is served at a bar.
 Charge #4. On December 15, 1990 in the Town of Fairfield you violated Section 30-6-A24(c) of the General Statutes that you did by yourself, servant CT Page 1676 or agent permit an intoxicated person, JOHN J. MacDONNELL, to loiter upon the permit premises.
Based on its findings the Department suspended the plaintiffs' permit for a period of three days plus an additional seven days or payment of a fine in the amount of $525.00 in lieu thereof.
The plaintiffs appeal that decision. The court finds that they are aggrieved within the meaning of General Statutes 4-183.
The plaintiffs launch a wholesale attack on the Department's conclusions that they violated the statute and regulation in question. In essence, however, their claims are that the evidence adduced at the Department's hearing was not sufficient to support those conclusions. The court will consider the plaintiffs' contentions concerning the two charges separately.
Charge #2 — Violation of General Statutes 30-90
The evidence which the Department considered with respect to this charge is essentially undisputed and is found in the testimony of Ronald Fazekas, a special agent of the Department, and Martin Pierce, the individual who was the subject of the charge. On December 15, 1990, at approximately 1:00 A.M., agents of the Department and officers of the Fairfield Police Department, conducted a surprise raid on the plaintiffs' nightclub, the Seagrape, which is the permit premises. Without any prior surveillance or undercover observation, the agents and officers simply walked in, ordered the lights turned up and the music turned down, and began checking identifications of the patrons, many of whom were young people. During the course of this investigation, they discovered Mr. Pierce. On that date, Pierce was age 19. He had gained entry to the Seagrape by presenting to the private security guard at the door a false Maine driver's license bearing his picture. The plaintiffs had hired the security guard to "card" everyone seeking entrance to the nightclub. Other than that encounter, however, there is no evidence in the record that the plaintiffs or any of their employees were specifically aware that Pierce was in the Seagrape that night. In particular, there is no evidence that Pierce attempted to buy a drink or CT Page 1677 that he was drinking while on the premises. On this point, Fazekas testified that Pierce told him at the Seagrape that night that he had nothing to drink there.
The plaintiffs contend that the evidence concerning Pierce, as summarized above, is not sufficient to support the Department's finding of a violation of General Statutes30-90. The court agrees.
The conduct which constitutes a violation of section30-90 is to "permit" a minor to loiter in premises where liquor is sold or to "allow" a minor to be in a room where a bar is located. In Guastamachio v. Brennan,128 Conn. 356 (1941), the Supreme Court held that the term "`permit' has been construed to be a more positive term connoting affirmative action or at least assent." Id. 359. "[I]ts primary meaning involves the idea of affirmative consent, necessarily involving knowledge." Id. 358. The court contrasted the term "permit" with the term "suffer", which it held to be a more passive form of conduct. In the present case, there is no evidence whatsoever that the plaintiffs affirmatively assented to the presence of Pierce in their nightclub with knowledge that he was a minor. Indeed, the evidence is to the contrary. It is undisputed that the plaintiffs made an effort to determine whether Pierce was a minor but he deliberately deceived them with false proof of age. Under these circumstances, it cannot be said that the plaintiffs actively and knowingly assented to the presence of a minor.
The same reasoning applies to the second prohibition in General Statutes 30-90. The term "allow" is virtually synonomous with the term "permit." Webster's Ninth New Collegiate Dictionary. Again, there is no evidence that the plaintiffs "allowed" Pierce to be in the barroom with any knowledge that he was a minor. Rather, despite elaborate security measures, they were deceived into believing he was of age.
Both the plaintiffs and the Department refer the court to State v. Kinkead, 57 Conn. 1733 (1889). Although the Supreme Court did not define the term "allow" in that case, it did establish a standard of liability under a criminal statute which is similar to section 30-90. "[I]f a licensed person allows one who may or may not be a minor to loiter on CT Page 1678 his premises, without using means to ascertain the fact, he shall be guilty of the offense if the person proves to be a minor . . . The ages of persons who frequent such places may be easily ascertained. Inquiry properly directed can hardly fail to elicit the desired information . . . If he neglects to use the necessary means to ascertain the age, the legislature may well say that his want of knowledge shall not excuse him." Id., 179-180. (Emphasis added).
As indicated, in the present case, there is abundant, undisputed evidence that the plaintiffs diligently attempted to ascertain Pierce's age before allowing him into the bar. They would not be liable, therefore, under the standard established by the court in Kinkead, supra, which, although not controlling in this case, certainly supports the plaintiffs' position.
The Department's principal argument with respect to the alleged violation of General Statutes 30-90 is that it is a statute imposing strict liability, not dependent on intent or knowledge, and without a "good faith defense." The Department argues that section 30-90 is "linked" to section30-86. That section, which prohibits the sale of liquor to a minor, exempts from its penalties a permittee who sells "in good faith" to a minor who uses a fraudulent special indicate that the legislature intended to limit the ordinary meaning of the terms "permit" and "allow," as established by the Supreme Court in Guastamachio.
For all of the above reasons, this court holds that the evidence in the record does not support the Department's finding that the plaintiffs violated section 30-90 with respect to Martin Pierce. The Department's decision on "Charge #2", therefore, was erroneous.,
Charge #4 — Violation of Regulation 30-6-A24(c)
The evidence which the Department considered with respect to this charge, according to its brief, consisted of the testimony of Edward Filush, a lieutenant in the Fairfield Police Department. He testified that he encountered John J. MacDonnell in the Seagrape Cafe on December 15, 1990, during the same raid as described above. Based on McDonnell's actions, speech and general demeanor, Filush determined that he was intoxicated. CT Page 1679 MacDonnell was present at the Department hearing, but neither the Department nor the plaintiffs called him as a witness.
The plaintiffs argue that the mere presence of an intoxicated person on the permit premises is not sufficient to constitute a violation of the regulation. The court agrees.
As indicated, the offense prohibited by the regulation in question is to "conduct the permit premises in such a manner as to allow an intoxicated person . . . to loiter there." Assuming, arguendo, that MacDonnell was intoxicated, there was nevertheless no evidence concerning how the plaintiffs conducted the premises so as to allow him to "loiter" there. In particular, there was no evidence showing how long MacDonnell was in the Seagrape while intoxicated; there was no evidence showing that the plaintiffs were lax in detecting his intoxication; there was no evidence showing that the plaintiffs failed to eject him after discovering his intoxication. In short, there was no evidence whatsoever concerning the manner in which the plaintiffs conducted the premises with respect to persons who are or become intoxicated.
The evidence concerning MacDonnell's alleged "loitering" is similarly insubstantial. "The generally accepted definition of `loiter' is to `stand around or move slowly about; to spend time idly; to saunter; to delay; to linger' . . . This definition of the word "loiter" has been applied, as to its meaning and usage, by our Supreme Court of Errors to the liquor control statute . . . ." State v. Koval, 23 Conn. Sup. 473,475 (1962), citing State v. Tobin, 90 Conn. 58, 62. As indicated, the only evidence concerning MacDonnell was Filush's opinion that he was intoxicated. There is nothing in the record showing MacDonnell was "loitering" in the bar under the generally accepted definition of that term.
The weakness of the Department's case is perhaps best illustrated by the language it employed in stating its decision on Charge #4. Rather than tracking the text of the regulation which it found to have been violated, the Department's decision omits any reference to the manner in which the plaintiffs conducted their business, although that is explicitly an essential element of the regulation. Instead, the Department bases its decision on the single fact that an intoxicated person was present on the premises when CT Page 1680 the police arrived. In effect, the Department seeks to rewrite the regulation to fit the limited evidence available in the particular case.
The Department argues that the court should accept the Department's interpretation of its own regulation, citing Griffin Hospital v. Commission on Hospitals, 200 Conn. 489,497 (1986). This rule, however, is based on the notion that consistent interpretation of a statute by the appropriate administrative agency over a period of time shows a "pattern of enforcement" and is "evidence of what the law is." Anderson v. Ludgin, 175 Conn. 545, 556-557 (1978). In this case, the Department has not demonstrated that it has ever interpreted the regulation in the manner it suggests here. Indeed, the Department cites no authority whatsoever for its interpretation.
The court concludes that the evidence before the Department at the hearing was insufficient to support the agency's findings and conclusions of law. The decision may not be affirmed, therefore. General Statutes 4-183.
The plaintiffs' appeal is sustained.
Maloney, J.