## NANCY SEKOR *v.* BOARD OF EDUCATION OF THE TOWN OF RIDGEFIELD
### (15534)

Borden, Norcott, Katz, McDonald and Peters, Js.

Argued December 4, 1996—officially released March 4, 1997

*Robert J. Murphy,* for the appellant-appellee (defendant).

*William M. Laviano,* with whom was *Norman J. Voog,* for the appellee-appellant (plaintiff).

*Richard Blumenthal,* attorney general, and *Bernard F. McGovern, Jr., Martha Watts Prestley* and *Linsley J. Barbato,* assistant attorneys general, filed a brief for the Connecticut state board of education as amicus curiae.

*Opinion*

PETERS, J. The principal issue in this appeal of the termination of the employment of a tenured public school teacher is the extent to which a teacher's competence to teach in one subject matter area limits a school board's decision to dismiss her for incompetence in other subject matter areas. The plaintiff, Nancy Sekor,

a tenured teacher, filed an administrative appeal in the trial court, pursuant to subsection (f) of General Statutes § 10-151,[1] to challenge the validity of the action of the defendant, the Ridgefield board of education (board), terminating her contract of employment. The trial court rendered judgment in favor of the plaintiff and directed her reinstatement. The board appealed from the judgment of the trial court to the Appellate Court,[2] and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The following facts are not in dispute. From 1981 to the time of her dismissal in 1993, the plaintiff was employed as a teacher in the Ridgefield public school system and had obtained tenure there. She was certified by the Connecticut state board of education as a secondary school teacher with a subject area endorsement in business education. During the 1989–90 school year, because of declining enrollments in business classes, she obtained a subject area endorsement in social studies and took a voluntary leave of absence to receive necessary training in order to obtain an additional subject area endorsement in English.

During the 1990–91 school year, the plaintiff's teaching assignment consisted of four business classes and

[1] At the time of the termination of the plaintiff's employment, General Statutes § 10-151 (f) provided in relevant part: "Any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (d) of this section may appeal therefrom, within thirty days of such decision, to the superior court. . . . The court, upon such appeal and after a hearing thereon, may affirm or reverse the decision appealed from. . . ." Subsequently, this language was transferred to subsection (e) of § 10-151 without modification. Public Acts 1995, No. 95-58, § 2.

[2] The plaintiff filed what she has denominated a cross appeal. Having prevailed in the trial court, the plaintiff is not aggrieved and has no standing to file a cross appeal. We will, therefore, consider the issues identified by the cross appeal as raising alternate grounds for affirmance of the judgment of the trial court. See *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 524, 662 A.2d 1281 (1995).

one social studies class. Thus, in that school year, the plaintiff's teaching assignment consisted of 80 percent business classes and 20 percent social studies classes. In response to difficulties she experienced in the social studies class, she was placed on the school administration's "Instructional Improvement Plan/Intensive Assistance Plan" (intensive assistance plan). Although the plaintiff's teaching of social studies improved somewhat during the 1990–91 school year, her supervisors recommended that she continue on the intensive assistance plan during the following school year.

For the 1991–92 school year, the plaintiff taught two business classes and three English classes. Thus, in that school year, the plaintiff's teaching assignment consisted of 40 percent business classes and 60 percent English classes. Despite continued administrative efforts, as prescribed by the intensive assistance plan, the principal of the school to which the plaintiff had been assigned concluded that the plaintiff was unable to teach her English classes satisfactorily. The principal, therefore, recommended termination of the plaintiff's employment. Viewed together, the plaintiff's teaching assignments in the 1990–91 and 1991–92 school years consisted of 60 percent business classes (six classes) and 40 percent social studies and English classes (four classes).

On March 23, 1992, the board voted to consider termination of the plaintiff's contract pursuant to subsection (d) of § 10-151.[3] Exercising her rights under that statute,

---

[3] At that time, § 10-151 (d) provided in relevant part: "The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence; . (2) insubordination against reasonable rules of the board of education; (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher, if no other position exists to which such teacher may be appointed if qualified, provided such teacher, if qualified,

the plaintiff requested, and received, a statement of reasons and a hearing before an impartial hearing panel.[4] After extensive hearings, a majority of the hearing panel found that the plaintiff was competent to teach business classes but incompetent and inefficient as a teacher of social studies and English. On the basis of this and subsidiary findings, the majority of the panel recommended to the board that it terminate the plaintiff's employment.[5] On October 6, 1993, the board voted

shall be appointed to a position held by a teacher who has not attained tenure, and provided further that determination of the individual contract or contracts of employment to be terminated shall be made in accordance with either (A) a provision for a layoff procedure agreed upon by the board of education and the exclusive employees' representative organization or (B) in the absence of such agreement, a written policy of the board of education; or (6) other due and sufficient cause. . . . Prior to terminating a contract, a board of education shall vote to give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with such board within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor. Within twenty days after receipt of written notice by the board of education that contract termination is under consideration, such teacher may file with such board a written request for a hearing. A board of education may designate a subcommittee of three or more board members to conduct hearings and submit written findings and recommendations to the board for final disposition in the case of teachers whose contracts are terminated for the reasons stated in subdivision (5) of this subsection. . . . Within ninety days after receipt of the request for a hearing, the impartial hearing panel, subcommittee of the board or hearing officer, unless the parties mutually agree to an extension, shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer. . . ."

In a 1995 revision, this language underwent changes not relevant here. See Public Acts 1995, No. 95-82.

[4] In accordance with § 10-151 (d), the hearing panel consisted of three members: one member selected by the plaintiff, one by the board and a third mutually chosen by the other two members.

[5] Stuart Losen, the panel member selected by the plaintiff, disagreed with this recommendation and filed a separate opinion recommending that the board continue the plaintiff's employment.

to terminate the plaintiff's employment on the grounds of incompetence and inefficiency, and the plaintiff was so notified the following day. Further facts will be provided where relevant.

In the plaintiff's appeal of the board's decision to the trial court, she raised numerous procedural and evidentiary challenges to the validity of her termination, none of which the trial court found persuasive. The court concluded, however, that, in light of the protected property interests and due process rights associated with the concept of tenure, it was improper to find the plaintiff incompetent, despite her failings in English and social studies, as long as she was competent as a business teacher. The court determined, therefore, that the plaintiff's employment had been wrongfully terminated and ordered her reinstated to a full-time business position that had become available during the course of the termination proceedings. This appeal followed.

I

In its appeal, the board claims that the trial court was mistaken both in its construction of § 10-151 (d) and in its remedial order. The board claims that § 10-151 (d) permits the termination of a tenured teacher's contract for general incompetence despite a finding that the teacher is competent to teach in one endorsed subject area. The board further claims that the trial court lacked a sufficient factual basis for its finding that a full-time business position had become available during the pendency of these termination proceedings. We agree with both of the board's claims.

A

Section 10-151, the Teacher Tenure Act, prescribes the manner in which teachers acquire tenure. To become tenured, a teacher must hold a certificate issued by the state board of education and must com-

plete a designated period of full-time continuous employment for the same board of education. See General Statutes §§ 10-151 (a) (6) (A) and 10-145 (teaching certificate requirement). The certificate indicates the particular grade level at which the teacher may be employed. See General Statutes § 10-145b (c) (1). In addition, the certificate has one or more endorsements that indicate the subjects in which the teacher is accredited to teach. See General Statutes §§ 10-145b and 10-145d (empowering board to adopt requirements related to subject area endorsements).

In this case, the plaintiff had tenure, was certified to teach at the secondary school level and had a certificate that was "endorsed" in business, social studies and English. Having attained tenure, the plaintiff was entitled to continuous employment, unless her contract was terminated for one of the reasons specified in § 10-151 (d). "Inefficiency or incompetence" is one of these specified reasons. General Statutes § 10-151 (d) (1).

"When considering termination of a tenured teacher's employment contract, a school board acts, like an administrative agency, in a quasi-judicial capacity." (Internal quotation marks omitted.) *Barnett* v. *Board of Education*, 232 Conn. 198, 206, 654 A.2d 720 (1995); see also *Tomlinson* v. *Board of Education*, 226 Conn. 704, 712, 629 A.2d 333 (1993). "A school board has discretion to accept or reject a recommendation from an impartial hearing panel, though it is bound by the panel's findings of fact unless unsupported by the evidence. . . . The board is bound by the panel's findings of fact, but not by its legal conclusions or by its recommendations." (Citations omitted; internal quotation marks omitted.) *Barnett* v. *Board of Education*, supra, 206; see also *Rado* v. *Board of Education*, 216 Conn. 541, 555, 583 A.2d 102 (1990); *Petrino* v. *Board of Education*, 179 Conn. 428, 430, 426 A.2d 795 (1980).

Judicial review of the school board's administrative decision follows established principles of administrative law. "The court's ultimate duty is only to decide whether, in light of the evidence, the [board] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts." (Citations omitted; internal quotation marks omitted.) *Barnett* v. *Board of Education*, supra, 232 Conn. 207–208; see also *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 397, 604 A.2d 351 (1992); *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 774, 535 A.2d 1297 (1988); *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986).

The issue of law presented by this case is the proper measure of a teacher's professional competence pursuant to § 10-151 (d) (1). A teacher who elects to obtain numerous endorsements on his or her teacher's certificate necessarily represents his or her ability to teach in the subject area of any and all of these endorsements.[6] The question thus posed is the extent to which multiple endorsements affect the scope of proper administrative scrutiny of the teacher's overall competence. The board contends that a conclusion of "general incompetence" is proper whenever a teacher manifests incompetence in two of the three subject areas in which the teacher holds endorsements. The trial court concluded, to the

---

[6] The dissent in this case assumes that no legal significance follows from the plaintiff's voluntary procurement of subject area endorsements additional to her endorsement in business education. We disagree. Just as these additional endorsements entitled the plaintiff to pursue greater opportunities for placement as a teacher, so these endorsements are relevant to her overall competence as a teacher.

contrary, that a teacher cannot be held to lack professional competence in any case in which the teacher is competent to teach in any one of his or her endorsed subjects.[7]

We address this issue within the confines of the circumstances of this case. The salient circumstances are that: (1) the plaintiff decided to obtain additional endorsements in English and in social studies as a result of declining enrollments in business classes, without any pressure or inducements on the part of school administrators; (2) the plaintiff has not challenged the school administrators' good faith in assigning her to teach classes in English and in social studies; (3) the plaintiff has not challenged the finding of the hearing panel that the school administrators acted in good faith in evaluating her performance in English and in social studies;[8] (4) in her English and social studies classes, which constituted 40 percent of her overall teaching obligations for the two years in question, the plaintiff's performance has been found incompetent both with respect to her instructional assignments and with

---

[7] The plaintiff also represents that it is improper to consider her competence in anything other than business studies because she has attempted to relinquish her endorsements in social studies and in English. Neither our research nor that of counsel has, however, succeeded in identifying any administrative or statutory mechanism that would effectively preclude the plaintiff from reclaiming these additional endorsements in the event of further attrition in business studies enrollment. In the event of a layoff, the plaintiff would be entitled, pursuant to § 10-151 (d) (5), to displace any nontenured teacher in any of the endorsed subject areas. The plaintiff has not challenged the conclusion of the hearing panel "that it has no power to require [the plaintiff] to give up rights she would have under the collective bargaining agreement, certification statutes, and her bumping rights under [§] 10-151 . . . if her employment contract were to be continued." Thus, the plaintiff's contention has no effect on the result we reach today.

[8] The finding of good faith, as the board appropriately observes, rebuts the plaintiff's interstitial claim that the termination of her employment contract was motivated by the board's desire to hire a less expensive replacement. For this reason, and because the claim is not adequately briefed, we decline to consider it further.

respect to her fulfillment of her administrative responsibilities; and (5) as the hearing panel recommended, the board determined that the plaintiff's employment contract be terminated on the basis of overall incompetence and inefficiency.

In light of these circumstances, we conclude that the board properly terminated the plaintiff's contract of employment. Pursuant to § 10-151 (d), the board was obligated to provide the plaintiff, as a tenured teacher, with a continuous contract within the areas of her endorsed subject areas, but it was not obligated to assign her only to those classes in which she was competent to teach. The board's plenary administrative authority over the plaintiff's assignments follows from *Delagorges* v. *Board of Education*, 176 Conn. 630, 410 A.2d 461 (1979), in which we rejected the claim that teachers who had been employed as administrators for more than three continuous years under individual administrative contracts had achieved administrative tenure and could not be reassigned to positions as teachers. We construed the continuous employment contract contemplated by § 10-151 (d) to afford a tenured teacher the right only to a generic position as a teacher, rather than to a specific position as an administrator. Id., 636–37. It follows that, having properly assigned the plaintiff to teach English and social studies classes, as well as business classes, the board properly could evaluate the plaintiff's competence to teach in all these subject areas. Just as § 10-151 (a) speaks to acquiring tenure generically, so § 10-151 (d) speaks to incompetence or inefficiency generically. See *Garovoy* v. *Board of Education*, 178 Conn. 618, 623, 424 A.2d 297 (1979) (extent of tenured teacher's rights upon layoff determined by express provisions of § 10-151). Any other construction of the statute would seriously undermine a school board's authority to assure proper instruction of the students for whose education the

board bears primary responsibility. See *Conley* v. *Board of Education*, 143 Conn. 488, 497, 123 A.2d 747 (1956).

We conclude, therefore, that the essential inquiry, when a board decides to terminate a teacher for incompetence under § 10-151, is whether the teacher's overall performance falls below the requisite standard. This conclusion does not diminish the constitutional rights properly associated with tenure. Established constitutional principles recognize that the property interest of a tenured teacher entitles the teacher "to continued employment except upon a showing of cause for termination or a bona fide elimination of the teaching position. . . . [The right to continued employment] is a property right protected under the due process clause of the fourteenth amendment to the United States constitution. *Board of Regents* v. *Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Lee* v. *Board of Education*, 181 Conn. 69, 72, 434 A.2d 333 (1980)." (Citation omitted.) *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 234, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986). The protection constitutionally afforded to a tenured teacher is a right to "some form of hearing"; *Board of Regents* v. *Roth*, supra, 570–71 n.8; and to other procedural safeguards such as "a written statement of the [employment] decision reached, the reasons for the determination, and a fair summary of the evidence relied upon." *Lee* v. *Board of Education*, supra, 79. However, "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop* v. *Wood*, 426 U.S. 341, 350, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976). It follows that a tenured teacher's constitutional rights do not include an entitlement to a particular teaching assignment of the teacher's own choosing.

In her appeal, the plaintiff purports to agree with this description of the proper scope of her rights as a

tenured teacher, both under § 10-151 (d) and under applicable constitutional law, but she contends, nonetheless, that the termination of her employment contract was unlawful. She claims that the trial court properly concluded that the board had never made a finding of general incompetence and that the trial court itself properly determined, upon an examination of the administrative record as a whole, that no such finding could be sustained. These arguments misread the trial court's memorandum of decision.

First, the trial court found no fault with the evidentiary or procedural basis upon which the board relied in deciding to terminate the plaintiff's contract. The court held, instead, that the board's decision was untenable, as a matter of law, because, in the court's view, § 10-151 (d) must be construed to forbid the termination of the employment contract "of a competent, tenured business teacher on the grounds of general incompetency and inefficiency." It is this construction of the statute that, in our view, is improper.

Second, the court did not purport to exercise equitable powers that, according to the plaintiff, were conferred upon the court by the provisions of § 10-151 (f). That subsection, at the time of these proceedings,[9] instructed the trial court to "allow any party to such appeal to introduce evidence in addition to the [administrative record], if it appears to the court that additional testimony is necessary for the equitable disposition of the appeal." Because the trial court heard evidence

---

[9] By amendments enacted in 1995, the legislature has redesignated § 10-151 (f) as § 10-151 (e) and has deleted the language allowing the presentation of evidence additional to that in the transcript on appeal. See Public Acts 1995, No. 95-58. In substitution, the legislature has provided that "[t]he court may affirm or reverse the decision appealed from in accordance with [General Statutes § 4-183 (j)]." Section 4-183 (j), even if applicable, would also fail to support the plaintiff's argument because that subsection does not authorize a trial court to exercise general equitable discretion on an appeal of an administrative decision.

about alleged procedural irregularities and evidentiary deficiencies with respect to the proceedings before the hearing panel, the plaintiff argues that the trial court had plenary authority to enlist equitable principles in her behalf and, in fact, did so. We disagree. The trial court could not have invoked such general equitable principles, in light of the limited scope of appellate review of an administrative decision under our established case law. See *Barnett* v. *Board of Education*, supra, 232 Conn. 207–208, and cases cited therein. Additional evidence may properly enlighten matters, such as possible prejudice, in order to facilitate an equitable appraisal of latent irregularities in an administrative record, but courts have no general equitable jurisdiction to oversee the decisions of school hearing panels and school boards. See *Tomlinson* v. *Board of Education*, supra, 226 Conn. 713–14.

B

In view of our disagreement with the trial court's construction of § 10-151 (d), we need not consider at length the merits of the trial court's decision to reinstate the plaintiff to a position as a business teacher. Presumably, the trial court would not have ordered reinstatement had the court upheld the board's decision to terminate the plaintiff's contract of employment on the ground of general incompetence. Even if we had come to a different conclusion about the scope of § 10-151 (d), however, we would disapprove of the trial court's remedial order. The trial court premised this order on its finding that, during the pendency of the termination proceedings, a teaching position in the area of business education had become available. That finding is not supported by the evidence in the record because the testimony on which the trial court relied establishes only that another business teacher retired six months

*after* the plaintiff's employment had been terminated.[10] Judicial review of the merits of termination proceedings must take the facts as they existed at the time the board acted. See *Barnett* v. *Board of Education,* supra, 232 Conn. 207–208.

## II

The plaintiff urges us to affirm the judgment of the trial court on a number of alternate grounds unrelated to the trial court's construction of § 10-151 (d). The plaintiff claims that: (1) the hearing panel lacked jurisdiction to consider her alleged incompetence and inefficiency because that was not the basis of the original charge against her; (2) the hearing panel's report was invalid because the plaintiff's representative on the panel had not been allowed to participate in its preparation; (3) the hearing panel's finding of the plaintiff's incompetence in social studies was an ex post facto determination that violated her constitutional rights;[11] (4) the hearing panel's finding that the plaintiff had received the intensive assistance to which she was entitled pursuant to General Statutes § 10-151b (b) was arbitrary, speculative and not supported by substantial

[10] The trial court's finding cannot be sustained by the plaintiff's bald assertion that school administrators had undertaken preliminary inquiries, prior to the termination proceedings, in anticipation of a business class vacancy in the near future. See Practice Book § 4064D (c) (appellee's statement of facts "shall be supported by appropriate references" to the record).

[11] Although the plaintiff frames her claim in terms of the ex post facto clause, this constitutional mandate has no applicability to a civil case. "[T]he ex post facto clause prohibits a state only from passing a law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed . . . .' *Cummings* v. *Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L. Ed. 2d 356 (1867) . . . ." (Citation omitted.) *Payne* v. *Fairfield Hills Hospital,* 215 Conn. 675, 683, 578 A.2d 1025 (1990); see also *Collins* v. *Youngblood,* 497 U.S. 37, 41, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990); *Bridgeport* v. *Hubbell,* 5 Conn. 237, 240 (1824). We will address the plaintiff's claim, as its underpinnings suggest, as a challenge to the evidentiary sufficiency of the hearing panel's conclusions, rather than to their constitutional validity.

evidence; and (5) the board conducted the October 6, 1993 proceedings in violation of the plaintiff's statutory and constitutional rights. The trial court fully considered and rejected each of these claims of administrative misconduct. We agree with the trial court.

The plaintiff's jurisdictional claim focuses on the fact that, when the board first considered the termination of her employment, the stated reason was "elimination of position" and that this was the only ground for termination stated in the initial notice to her. Under § 10-151 (d), however, the only initial obligation imposed upon a board is to notify a teacher that "termination of [her] contract is under consideration"; the statute demands no greater specificity. Once this initial notice is sent out, however, § 10-151 (d) empowers a teacher to request a more complete statement of reasons. As the trial court found, the plaintiff was fully apprised, in timely fashion, that "inefficiency and incompetence" would be argued by the board, and she had ample opportunity before the hearing panel to address and rebut the board's charges. Our law requires nothing more to confer jurisdiction on the hearing panel. See *Petrovich* v. *Board of Education*, 189 Conn. 585, 588, 457 A.2d 315 (1983); *Tucker* v. *Board of Education*, 177 Conn. 572, 578 n.5, 418 A.2d 933 (1979); *Mauriello* v. *Board of Education*, 176 Conn. 466, 472, 408 A.2d 247 (1979); *Joanou* v. *Board of Education*, 165 Conn. 671, 673–74, 345 A.2d 46 (1974).

The plaintiff's other claims of deficiencies in the report of the hearing panel involve findings of fact that do not require elaboration on appeal. The trial court found that the panel member appointed by the plaintiff had not been prevented from deliberating or participating in the panel's decision-making process. This finding is not clearly erroneous, particularly in view of the presumption of regularity that attaches to administrative proceedings. *Metropolitan District Commission* v.

*AFSCME, Council 4, Local 184,* 237 Conn. 114, 122, 676 A.2d 825 (1996). Similarly, the trial court properly determined that the administrative record contained substantial evidence; *Barnett* v. *Board of Education,* supra, 232 Conn. 211; to support the hearing panel's findings regarding the plaintiff's teaching incompetence in social studies and regarding the school administration's substantial compliance with the requirements of the intensive assistance plan.

The plaintiff also challenges the legality of the board's proceedings on October 6, 1993, when the board voted to terminate the plaintiff's contract of employment. The plaintiff claims that the board violated her statutory and constitutional rights: (1) by refusing to hear her claims of alleged procedural irregularities not evident on the face of the record of the hearing panel; and (2) by permitting an attorney to act as the board's procedural advisor despite the fact that a partner in the attorney's law firm was defending the board in a federal age discrimination action filed by the plaintiff. We are unpersuaded.

The procedural irregularities that the board refused to consider relate to questions raised by the plaintiff about the full participation of her representative in the deliberations and in the drafting of the report of the hearing panel, and about the timeliness of the report issued by the hearing panel. Although the plaintiff argues that § 10-151 (d) requires the board to hear evidence and to consider the merits of such alleged latent defects in the report of a hearing panel, she has pointed to no statutory language to this effect, and we have found none. Pursuant to § 10-151 (d), the only statutory obligation of the board is to "give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer." The board has complied fully with this statutory mandate. Moreover, the

plaintiff's constitutional rights to due process were adequately protected by her right to raise these issues in her appeal to the trial court pursuant to § 10-151 (f).[12] *Connecticut Light & Power Co.* v. *Norwalk*, 179 Conn. 111, 119–20, 425 A.2d 576 (1979); see also *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 686–87, 485 A.2d 1272 (1984) (trial court may hear additional evidence if administrative record is unclear).

The plaintiff's final claim is that the board improperly failed to disqualify, for conflict of interest, an attorney who was acting as the board's counsel at the same time that a law firm partner of the attorney was representing the board in a federal court age discrimination action filed by the plaintiff. Because the board acts in an administrative capacity, the plaintiff can succeed on such a claim only by proving actual bias.[13] *Rado* v. *Board of Education*, supra, 216 Conn. 556. A determination of the existence or absence of actual bias is a finding of fact. *Transportation General, Inc.* v. *Dept. of Ins.*, 236 Conn. 75, 77, 670 A.2d 1302 (1996). The trial court found that the plaintiff had failed to prove her allegation of actual bias. In view of the record, which shows, inter alia, that the attorney in question rendered procedural advice only, and did not instruct the board about the merits of the recommendation of the hearing panel,[14] we conclude that the trial court's finding was not clearly erroneous.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's appeal.

[12] The trial court considered and rejected these issues on their merits.

[13] In view of the fact that the dissent concedes that the plaintiff had no due process right to a full evidentiary hearing before the board, the limited procedural nature of the advice proffered by the board's attorney provides additional support for the trial court's factual finding of no actual bias.

[14] We disagree with the assertion in the dissent that, in the administrative proceeding, the actions of the board's attorney led crucially to the plaintiff's termination. The crucial findings of fact that the board had a duty to review were the findings made by the hearing panel.

In this opinion BORDEN, NORCOTT and KATZ, Js., concurred.

MCDONALD, J., dissenting. The plaintiff, Nancy Sekor, as the majority observes, was found competent to teach business courses by an impartial hearing panel. While the majority must focus on the hearing panel's finding of the plaintiff's "general" incompetence, it fails to consider the hearing panel's qualification of that finding, which I set out verbatim.[1] The hearing panel recommended termination of the plaintiff's employment while again referring to the plaintiff's competence to teach business courses.[2] As the majority recognizes, the

---

[1] The hearing panel qualified its findings as follows: "[The plaintiff's] performance as a teacher in 1991–92 was instructionally incompetent and inefficient in English and her general administrative performance also was incompetent and inefficient. The latter alone (administrative performance) was sufficient to reasonably conclude that [the plaintiff] was incompetent and inefficient within the meaning of [General Statutes §] 10-151. Where the panel differs with the Administration, and it perhaps is a point upon which reasonable minds could differ, is *we believe that if [the plaintiff] had an assignment limited to her business 7–12 certification, she would not be incompetent and inefficient.* In other words, we believe that these kinds of problems are situational for [the plaintiff], i.e., they only rise to the level of incompetence and inefficiency when [the plaintiff] is assigned to teach in areas outside of her business certification (i.e., social studies or English)." (Emphasis added.)

[2] The hearing panel stated that because of the plaintiff's competence to teach business courses, "the panel gave serious consideration to recommending that [the plaintiff's] employment contract not be terminated and that her employment contract be continued with the limitation that she would have no right to any assignments outside the area of her business 7–12 certification. Upon reflection, however, the panel concluded that it has no power to require [the plaintiff] to give up rights she would have under the collective bargaining agreement, certification statutes, and her bumping rights under [§] 10-151 (in the event of future layoffs, if her position were eliminated she would have a statutory right to bump non-tenured teachers in any area in which she is certified) if her employment contract were to be continued. Additionally, if we were to have recommended continuation of [the plaintiff's] employment contract with the above stated limitations and there were no business positions open for 1993–94 (and at the time of the hearings it appeared highly doubtful that there would be), we would have intended that she be placed on the recall list with recall rights to only business positions. This intention created another problem, because

defendant, the Ridgefield board of education (board), was required to accept the hearing panel's factual finding of the plaintiff's general incompetence *if teaching nonbusiness courses.* I submit that the board was also equally required to accept the hearing panel's finding that the plaintiff was competent if teaching business courses.

When the board voted to terminate the plaintiff's employment, the issue of hiring a teacher with multiple endorsements to teach in one certification area, and the board's legal right to terminate that teacher's employment because of declining student enrollment in that particular area, was discussed. The board's attorney advised the board that termination of employment in those circumstances, for elimination of the position, could lead to future litigation over that teacher's displacement, or "bumping," and recall rights in other endorsement areas. The board's attorney stated that "[t]enure is tenure." Thereafter, the board voted to terminate the plaintiff's employment and advised her that it did so because she was "not competent and efficient to teach in the areas of English 7–12 and social studies 7–12."

To find a standard of general incompetence, the majority cites to *Delagorges v. Board of Education,* 176 Conn. 630, 410 A.2d 461 (1979), upholding the right of boards of education to assign tenured teachers to either

according to the express language of Article XXIV Section B, Recall of the collective bargaining contract, access to the recall list is limited to teachers 'whose contract is terminated as a direct result of the elimination of his or her position . . . .' If we recommend that [the plaintiff's] employment contract *not* be terminated, and if she in fact were not terminated, she could not logically have immediate access to the recall list. Thus while this panel might have made such a recommendation if we had the clear authority to do so and if we were certain our recommendation could be implemented without legal disputes, we are convinced that such a recommendation would throw the parties into a legal morass which would rival the one that led to the instant dispute." (Emphasis in original.)

teaching or administrative duties. *Delagorges* does not give a board power to assign a teacher to a field in which the teacher is incompetent when there are openings in a field for which the teacher is competent. That would strain common sense and violate a board's ultimate responsibility to educate. A board should have no more power to do so than a teacher should have to insist on teaching courses for which the teacher is incompetent. Both scenarios are patently unreasonable.

The law should be reasonable, if it is to be the law. As Sir Edward Coke wrote: "Reason is the life of the law, nay, the common law is nothing else but reason." E. Coke, First Institute (1628). The early English cases in the development of common law put it in this manner: "Let us consider the reason of the case. For nothing is law that is not reason." *Coggs* v. *Bernard*, 2 Ld. Raym. Rep. 909, 911 (1703).

In essence, the board failed to take the appropriate action, which would have been to restrict the plaintiff's teaching responsibilities to business courses. Instead, fearing that, if her position were to be eliminated because of declining business enrollments, the plaintiff would exercise her displacement or recall rights for nonbusiness courses, and fearing further litigation, the board simply fired her.[3] In this manner, two wrongs made a right. This was contrary to the old American proverb, which is still true today: "Two wrongs don't make a right." I cannot agree with this reasoning.

I also dissent on procedural and due process grounds regarding the role of the board's attorney and the circumstances of the board's meeting at which it voted to terminate the plaintiff's employment. At that meeting, the plaintiff appeared with her attorney and asked to

---

[3] Since the board abandoned its initial claim of elimination of a teaching position as a basis for termination, it may not rely upon that circumstance as a possibility in the future.

be heard about the termination and about the participation of the board's attorney. The plaintiff had brought an action against the board for age discrimination and the board had hired the attorney's firm to defend it in federal court. The plaintiff suggested that the attorney had a conflict of interest because of that employment.

The board's attorney advised the board that the plaintiff did not have any right to be heard about any matter at the meeting. He stated that if any board member had a question about his advice, then the member should make a motion to consider that issue, and, if seconded, the issue could be subject to board action. No such motion was made.

During the discussion, the plaintiff's counsel asked that a letter be marked for identification, and the board's counsel stated that it would not be marked as "[t]his is not a hearing." He further instructed the board that it could not hear any additional facts, explained the nature of the motion that he be disqualified and discussed the board's right to have counsel. The board's counsel then stated to the plaintiff's counsel: "You're not going to get a hearing. This is a meeting, not a hearing." Thereafter, under the direction of its counsel, the board proceeded to accept the hearing panel's report and to terminate the plaintiff's employment without hearing her counsel.

This court has consistently found a property interest in a teacher's contract of employment. The act of taking away such a property right requires due process which equates to a fair hearing.[4] See *Petrowski* v. *Norwich Free Academy*, 199 Conn. 231, 234–35, 506 A.2d 139, appeal dismissed, 479 U.S. 802, 107 S. Ct. 42, 93 L. Ed. 2d 5 (1986).

---

[4] I do not assume that the plaintiff had a right to a full evidentiary hearing before the board, only a fair proceeding leading to the termination of her employment.

The trial court discussed the participation of the board's counsel. The court remarked that it could be argued "for the sake of appearances [that the board's attorney] should have refrained from advising the [b]oard" and the board should have obtained "independent counsel," but concluded, however, that the record did not show the board and its attorney to be " 'allies in the same cause' " and that no evidence of actual bias or prejudice was presented. See *Zanavich* v. *Board of Education*, 8 Conn. App. 508, 512, 513 A.2d 198, cert. denied, 201 Conn. 809, 515 A.2d 381 (1986) (counsel and board regarded themselves as "allies in the same cause").

*Petrowski* v. *Norwich Free Academy*, supra, 199 Conn. 231, concerned attorneys who were members of the defendant's board of trustees that terminated a teacher's tenure and who were also the attorneys for the board of trustees in some unrelated matters. The court held the attorneys' relationship as public officials to the teacher was not such as to call into question whether the members' personal interest reasonably might conflict. Id., 241; *Low* v. *Madison*, 135 Conn. 1, 8, 60 A.2d 774 (1948). The court was careful to point out there that the attorneys' representation of the board of trustees on unrelated matters was too remote and tenuous. *Petrowski* v. *Norwich Free Academy*, supra, 240. The court specifically referred to the fact that the matters handled by the attorneys were "wholly unrelated to the controversy they were to consider." Id., 243. The court went on to state that there was "no showing of any connection between their law firm and the school officials or other persons who were advocating the termination of the plaintiff['s employment]." Id.

In this case, in advising the board, the attorney gave the instructions that led to the termination of the plaintiff's employment. It is not disputed that his firm also represented the board in an age discrimination lawsuit

brought against it by the plaintiff related to the termination proceedings. It cannot be said that the attorney's personal interest in defeating the plaintiff's age discrimination claim by establishing other bona fide grounds for termination might not reasonably conflict with his duties to ensure a fair hearing before a fair tribunal.

I find that both the basis of the board's action and its procedures were improper and prejudicial to the plaintiff. The board did have the right, and indeed the duty, to terminate the employment of an incompetent teacher, but it had to do so reasonably and fairly. It did not.

Accordingly, I respectfully dissent.