[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is an appeal taken by the plaintiff, Marie Young, pursuant to General Statutes, Section 10-151 (e), from a decision by the defendant, the New Haven Board of Education ("the Board"), CT Page 1692-a terminating her contract of employment.
On March 27, 1997, the plaintiff was a physical education teacher, employed by the defendant and assigned to the Jackie Robinson School. The plaintiff was tenured and had twenty seven years' service in the New Haven public school system. On March 27th some twenty two students, members of a physical education class conducted by the plaintiff, were required to undergo a search following an allegation made by one student that money belonging to her was missing. By letter dated April 3, 1997, Reginald Mayo, Superintendent of Schools, notified the plaintiff that he had decided to pursue consideration of the termination of her contract, based on the plaintiff's role in said incident.
On April 4, 1997, the plaintiff requested a statement of the reasons for the proposed termination of her contract of employment. Mayo advised the plaintiff by return letter that her contract was under consideration for termination for (1) inefficiency or incompetence; (2) insubordination against reasonable rules of the New Haven Board of Education; and (3) other due and sufficient cause.
On April 17, 1997, the plaintiff requested a hearing before an impartial hearing panel pursuant to General Statutes Section10-151 (d), A panel was selected and hearings were held on May 6, May 28, June 4, 11, 14, 17; July 3, July 7; September 2, 15, 24, 1997. The panel, with one member dissenting, issued its findings and recommendation on November 7, 1997. The panel majority recommended that the plaintiff not be terminated. The dissenting member issued findings of fact and recommended that the plaintiff's contract of employment be terminated.
The defendant Board met on November 13, 1997 and, after deliberation, issued its decision terminating the plaintiff's contract of employment. In doing so, the Board adopted the panel majority's findings of fact as well as some 32 additional findings of the dissenting member but rejected the majority recommendation and terminated the plaintiff's contract of employment. The defendant Board issued a written "Final Decision" on November 20, 1997 stating that the plaintiff's termination was justified for six reasons. This appeal followed.
 II
The incident giving rise to this appeal occurred on March 27, CT Page 1693 1997, during the fifth school period. The plaintiff was conducting a physical education class for some twenty two girls from the fifth and sixth grades. Toward the end of class one student informed the plaintiff that ninety one dollars belonging to the student was missing. The plaintiff asked all the girls to return to the locker room The plaintiff then telephoned an assistant principal's office to request that an administrator be sent to the gym. Assistant Principal Gloria Rogers arrived at the gym, followed by Cassandra Lang, a security aide, whom Rogers had asked to accompany her. Rogers questioned the girls and ascertained that forty, not ninety one, dollars were allegedly missing. While Rogers was talking to the girls, one student approached the plaintiff and told her she thought she knew who had the money. The plaintiff told the girl to "hold on a minute", but never followed up on this claim. The plaintiff never ascertained the name of the student nor informed Rogers of the student's claim. Rogers told the girls, "If the money [is] not found you will have to be searched". In describing the search to be done, Rogers used the word "strip" or "stripped". When the missing money was not forthcoming, Rogers instructed the plaintiff and Lang to take the girls into the plaintiff's office one at a time to be searched.
The plaintiff and Lang entered the office. The plaintiff adjusted a curtain in a window so that no one outside the office could look in. When the first girl to be searched entered the office Lang asked the plaintiff, "How are we going from there?" Lang first told the girl to remove her shoes and turn her socks inside out. Lang then told the student to turn her pants pockets inside out. No money was found. Lang then asked the plaintiff what she should do next and the plaintiff replied, "Check her waistband". All twenty two girls in the plaintiff's class were searched. The search consisted in having the students remove their shoes and socks, then pull their pants down, then pull their panties down to their knees; those wearing bras were also told to pull up their shirts and shake out their bras. The plaintiff was present during the search and neither told Lang not to search the girls nor that it was wrong, to do so.
The defendant board voted to terminate the plaintiff's contract of employment for her role in this incident.
 III
In its Final Decision, dated November 23, 1997, the board CT Page 1694 stated six reasons in justification of the plaintiff's termination:
1. Ms. Young chose not to familiarize herself with the Board's policy [regarding student searches] or even read it. Ms. Young's neglect represented inefficiency or incompetence and other due and sufficient cause for the termination of her contract of employment with the Board.
2. During this search, Ms. Young was present, gave some instructions on the conducting of the search and at the very least, did nothing to prevent or stop the search. Ms. Young, in fact, made sure to close the curtains on the window to her office prior to starting the searches. The search required the female students to remove their shoes and i socks, lower their pants and panties at least to their knees and, in some cases, raise their shirts or blouses above their bras. These actions were in violation of the Board's published policy regarding student searches. Ms. Young's actions, and failures to act, represented inefficiency or incompetence, insubordination against reasonable rules of the Board, and other due and sufficient cause for the termination of her contract of employment with the Board.
3. Ms. Young was, prior to the search, given information regarding the possible identity of the potential thief. Ms. Young never followed up on the information or informed the administrator present of the information. Ms. Young's failure to properly handle information which could have eliminated or greatly reduced the necessity for a search represents inefficiency or incompetence, and other due and sufficient cause for the termination of Ms. Young's contract of employment with the Board.
4. The search caused feelings of anger and shame in, and negative impact on self-esteem of, students involved. Engendering such feelings not only causes harm to the students involved, but is disruptive of the educational environment in the school system, creating a lack of trust and a concern for personal integrity which is not conducive to an appropriate educational environment. Further, negatively impacting on student self esteem and engendering feelings of student anger toward school staff is detrimental to maintaining discipline in the schools. These affects represent inefficiency and incompetence, and other due and sufficient cause for the termination of Ms. Young's contract of employment with the Board. CT Page 1695
5. Connecticut Teaching Competencies and the Code of Professional Responsibilities for Teachers indicate that teachers should be empathetic to and cognizant of the feelings and needs of the students . . . Ms. Young's failure to demonstrate the appropriate empathy and concern for her students represents inefficiency or incompetence or other due and sufficient cause for the termination of her contract of employment with the Board.
6. [T]he supplemental findings [of the dissenting member of the panel] includes uncontradicted evidence from a qualified medical doctor who is an expert in the field of child psychiatry that the search in question had severe and long-lasting potential impact on a number of the students involved . . . This potential harm, and Ms. Young's demonstrated lack of concern for the situation in which her students were placed, represents inefficiency and incompetence, and other due and sufficient cause for the termination of Ms. Young's employment with the Board.
 IV.
This appeal is taken pursuant to General Statutes, Section10-151 (e). Section 10 151(e) in pertinent part provides: "Any teacher aggrieved by the decision of a board of education . . . may appeal therefrom . . . to the Superior Court." "The court, upon appeal and hearing thereon, may affirm or reverse the decision appealed from in accordance with subsection (j) of §4-183."
General Statutes § 4-183 provides, in pertinent part:
"(j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The plaintiff's complaint alleges all six grounds as bases CT Page 1696 for sustaining her appeal
The plaintiff argues, first, that she did not participate in the searches, but at most observed said searches; second, she was not at fault because she was unaware of the defendant Board's policy by virtue of the Board's failure to disseminate said policy in an, meaningful way; third, in being present during the searches the plaintiff was following the instructions of a supervisor. The plaintiff also claims that the Board, in terminating her contract of employment denied her rights both to procedural and substantive due process and acted contrary to the public policy expressed in General Statutes §§ 10-220, 10-151
and 10-151 (b).
 V.
A school board, when considering termination of a tenured teacher's employment, acts like an administrative agency, in a quasi-judicial capacity, Barnett v. Board of Education,232 Conn. 198, 206. A school board has a duty to afford a tenured teacher a fair hearing and to terminate an employment contract only for one or more of six reasons, enumerated in the statute, which reasons must be supported by a fair preponderance of the evidence, Catinov. Board of Education, 174 Conn. 414, 417; General Statutes, Section 10-151 (d). In challenging an administrative agency action, a plaintiff has the burden of proof, Samperi v. InlandWetlands Commission, 226 Conn. 579, 587. The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion, Id. The plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision, Id.(citations omitted). Courts have no general equitable jurisdiction to oversee the decisions of school hearing panels and school boards (citation omitted) Sekor v. Board ofEducation, 240 Conn. 119, 131. In reviewing the decision of a school board, the court's ultimate duty is only to decide whether, in light of the evidence, the {Board} has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion, Barnett v. Board of Education. supra, at 207. "Conclusions of law reached by the [Board] must stand if the court determines that they resulted from a correct application of the facts found and could reasonably and logically follow from such facts", Id. at 207, 208 (citations omitted).
 VI.
CT Page 1697
A school board has discretion to accept or reject a recommendation from an impartial hearing panel, Rado v. Board ofEducation, 216 Conn. 541, 555 (citation omitted), but a board is bound by the panel's findings of fact unless unsupported by the evidence, Id. "The board is bound by the panel's findings of fact but not by its legal conclusions or by its recommendations",Barnett v. Board of Education, supra, at 206. When, as here, a dissenting panel member makes findings of fact, the Board is free to adopt a dissenter's finding of fact, when such finding is supported by substantial evidence in the record, Id., at 214 "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence" (citations, internal quotation marks, omitted), Id., at 211, 212.
In the case at issue, the impartial hearing panel made 109 findings of fact. The Board accepted and adopted these 109 findings, as well as 32 additional findings by the dissenting panel member. which the Board found not in conflict with those of the panel majority and supported by substantial evidence in the record. The court finds that there was substantial evidence in the record to support the board's adoption of the said additional findings of the dissenting panel member.
The Board is not bound by the panel majority's recommendation. Neither is the Board bound by statements in the sections of the panel decision entitled "Introduction, "Findings and Recommendations", and "Summary." The plaintiff repeatedly complain that the Board, in reaching its decision ignored the panel majority's "ultimate findings of fact", in apparent reference to the contents of the "Finding and Recommendations" section and perhaps the "Summary", as well. The Summary is a conclusion of law, based or several conclusions drawn by the panel majority from the evidence. The section, "Findings and CT Page 1698 Recommendations", is a melange of comments, conclusions and opinions, wherein the panel majority shares the analytical process it followed in reaching its; recommendation, offers a wide-ranging critique of certain Board policies not directly related to the issues at hand, reviews what the panel majority deemed salient case law applicable to this case and shares its views on the effects of searches such as occurred here on children. The Board is not bound by the contents of either the "Finding and Recommendations" or "Summary" sections, though it is free to utilize such contents if it so desires.
The plaintiff repeatedly complains that the defendant Board has engaged in "cherry picking" by basing its conclusions on certain findings of fact while ignoring other "equally strong" or "salient" evidence. The plaintiff misconstrues the responsibilities of the Board and misapprehends the substantial evidence rule. The Board is not required to give equal weight to every finding of fact, nor is it required to draw the same inferences from findings of fact as did the panel majority. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, (citations, internal quotation marks omitted), Barnett v. Board of Education, supra, at 214.
The plaintiff also misconstrues the relationship between the Board and the panel, suggesting that the court should apply its standard of review of an administrative agency's decision to the panel majority decision, asking the court to find that "the panel findings are consistent with the evidence on the record, that the panel properly applied a civil burden of proof and that there was no showing that the panel acted illegally, arbitrarily and capriciously". The short answer is that even if the panel's decision met these criteria a defendant Board would not be bound by the panel's recommendation but would be free to draw differing conclusions from the same set of facts, The court's job is to apply the proper standard of review to the Board's decision and to determine if the Board's decision j is supported by substantial evidence in the record.
 VII.
As its second reason for terminating the plaintiff's contract of employment, the Board states that during the search at issue, "Ms. Young was present, gave some instructions on the conducting CT Page 1699 of the search and at the very least, did nothing to prevent or stop the search." "Ms. Young's actions, and failures to act, represented inefficiency or incompetence, insubordination against reasonable rules of the Board, and other due and sufficient cause" for termination of her contract.
The court finds that on March 27, 1995 there was in effect a Board policy regarding student searches and that the searches at issue were in violation of said policy. The court finds that there is substantial evidence in the record from which the Board could conclude that the plaintiff was aware of the searches in question, participated in them and did nothing to prevent or stop them, notably Findings of Fact:
 38. Rogers instructed Young and Lang to take the girls into Young's office one at a time to be searched.
42. Young and Lang then went into Young's office.
 43. Young's office has a window. After Young and Lang entered the office, followed by the first student who would be searched, Young adjusted the curtains by the windows to make sure they would be fully closed so that no one could peek through.
 46. When [the first] child entered the office Lang asked Young, "How are we going from there?"
 47. Lang told [the child] to remove her shoes and turn her socks inside out. Lang then told [the child] to turn her pockets inside out. She found no money.
 48. Lang then asked Young what she should do next and Young replied. "Check her waistband."
 49. All 22 students in Young's fifth period class were searched for the missing money.
 50. The search consisted of the students removing their shoes and socks and pulling their pants and panties down to their knees and, subsequently, if they were wearing a bra, pulling up their shirts to expose the bra area.
 50a. Young was present during this search and neither told Lang not to search these girls nor that it was wrong to search them. CT Page 1700
 51. On March 27, 1997, Young explained to Principal Freeman and Rogers "that the girls were asked if they had bras on, to pull up their shirts, and only if they had big shirts on, to pull their pants to their knees".
A teacher may be deemed incompetent for failure to perform duties other than competent classroom teaching, including violation of school rules, 68 Am.Jur.2d, S. 150. Competency encompasses deficiencies in personality, composure, judgment and attitude which have a detrimental effect on a teacher's effectiveness, 78 C.J.S. Section 277. A teacher's lack of judgment may be deemed incompetence, Tichenor v. Orleans ParishSchool Board, 144 So.2d 603, 605.
Based on substantial evidence in the record, the Board was entitled to conclude that the plaintiff did participate in a search which was in violation of Board policy on student searches and that such participation constituted incompetence and other due and sufficient cause warranting termination of her contract of employment.
With regard to the defendant Board's claim that the plaintiff's conduct constituted insubordination against reasonable rules of the Board, the court finds that a requisite element of insubordination is "willfulness", that is, that an offender, cognizant of a reasonable rule, deliberately violates such rule. The court finds nothing in the record to support a claim that the plaintiff had knowledge of the policy at issue and deliberately violated said policy.
With regard to the Board's third stated reason for termination, that the plaintiff failed to pass on to Rogers "information regarding the possible identity of the potential thief", the court finds the premise on which the claim is based speculative and concludes that such failure by the plaintiff, if true, would not rise to the level of inefficiency, incompetence or other due and sufficient cause warranting termination of the plaintiff's, contract.
 VIII
The Board cites the plaintiff's failure to familiarize herself with its student search policy as a reason for termination. CT Page 1701
There was such a policy in effect on March 27, 1997. Was said policy reasonably calculated to provide proper guidance to teachers, administrators and staff as to the limits to, procedures for, and propriety of student searches? If so, was said policy stated in I language understandable to the average teacher? If so, was the policy adequately disseminated to those who were expected to adhere to it?
In order to ensure that teachers were made aware of Board policy, the schools administration extracted some of the most important policies from the Board Policy manual in late August or early September, 1995 and published them in an Administrative Procedures booklet, (Exhibit FOF #64). Copies of the Administrative Procedures booklet were sent in late August or early September, 1995, to the principals of each school in the system for dissemination to students, parents and staff, including teachers (FOF #65). The booklet was again published in 1996 and put in orientation packages that were distributed to students, parents and staff, including teachers (FOF #67). The Administrative Procedures booklet was put in teachers' mailboxes (FOF #68). The plaintiff first became aware of the Administrative Procedures booklet during the 1996-97 school year when a copy was placed in her mailbox (FOF #69). The plaintiff is aware the Board institutes policies from time to time and she is also aware that these policies govern her as a teacher in the New Haven public school system (FOF #70). Despite this, the plaintiff has never read anything in the Administrative Procedures booklet and has no knowledge of what it contains. When the plaintiff received the booklet she only "peeked" at it (FOF #71).
The Board's student search policy in pertinent part and as set forth in the Administrative Procedures booklet, is attached as Appendix 1 (FOF #73).
The court finds that the Board's policy on student searches was reasonably calculated to protect the rights of the students while giving due consideration to school officials' responsibility to create and maintain an environment consistent with the schools' educational mission. The policy was coherent, logical and presented in sufficient clarity and detail so as to be readily applicable by competent teachers in situations arising which might call for implementation of the policy. The policy, as stated, was neither overbroad, contradictory, nor confusing. The court concludes that no competent teacher, conversant with the Board policy regarding student searches, would have conducted, CT Page 1702 participated in, or acquiesced in the searches conducted on March 27, 1997. Indeed, the plaintiff makes no claim that the said searches comported with Board policy. Rather she argues that she was unaware of the Board policy by reason of the Board's failure to disseminate said policy in any meaningful way. The plaintiff further argues that "meaningful dissemination" necessarily must include instruction as to the meaning of the Board's student search policy and attendant rules and regulations
There is nothing in the record to indicate that the Board did anything to disseminate its student search policy to the plaintiff, other than to distribute the Administrative Procedures booklet. The defendant, not surprisingly, believes that such dissemination was adequate.
The court finds that the defendant Board's distribution of the Administrative Procedure Booklet sufficed to meet the minimal requirement of meaningful dissemination to the plaintiff.
The plaintiff argues that lacking instruction a teacher should not be deemed incompetent or inefficient for lacking technical knowledge regarding complex legal issues. The defendant argues that "simple common sense" should have alerted the plaintiff that the searches at issue were wrong, citing Doe v.Renfrow, 631 F.2d 91, 92, 93. Common sense maintains a proper place in a judicial or administrative proceeding, Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525, 537, fn. 9 (citation omitted). Black's Law Dictionary (Revised Fourth Edition, 1968) defines common sense as: "sound practical judgment . . . ." A teacher, as a professional, is expected to exercise sound practical judgment in the situations which confront her in the course of her duties. No training in complex legal issues is required to understand such rules as: "At no time should school officials conduct a search which requires a student to remove more clothing than his/her shoes or jacket". The court finds that the panel's findings of fact (FOF #64, 65, 67, 68, 69, 70, 71) provide substantial evidence in the record to support the Board's finding that the plaintiff "chose not to familiarize herself with the policy or even read it." The court finds that the Board was entitled to conclude that the plaintiff's failure to acquaint herself with the said policy constituted incompetence.
 IX
CT Page 1703
The fourth, fifth and sixth grounds for termination of the plaintiff's contract asserted by the defendant Board have to do with the impact of the searches on the students involved and the plaintiff's responsibility toward the children in the circumstances.
The Board concluded that the search caused feelings of anger and shame in, and negative impact on self-esteem of, the students involved. In rebuttal, the plaintiff cites the panel majority's conclusion that "there was absolutely no scintilla of evidence that any child suffered any harm of any kind".
The panel's Finding of Fact 56a states:
"The girls also felt a sense of betrayal and shame for not having spoken up more against being searched and for not having stopped the search."
The panel's Finding of Fact 56b states:
"The four girls experienced a feeling of suppressed anger, such as one would feel in a situation in which one is being bullied."
These findings suffice to support the Board's conclusion that the search caused feelings of anger and shame in, and negative impact on self-esteem of, the students involved. This conclusion is bolstered by the additional findings of fact (FOF #56(A) through #56(N), #56(Q), #56(R)) submitted by the dissenting panel member and adopted by the Board.
The court finds there is substantial evidence in the record, from which the Board could conclude that the student searches at issue caused harm to the children involved and were disruptive of the educational environment in the school system and that the plaintiff's acquiescence, and participation in, said searches constituted incompetence and other due and sufficient cause for termination of her contract of employment.
It is undisputed that the plaintiff's professional conduct is governed by the Connecticut Teaching Competencies, which lists the skills and abilities which a teacher should possess and by The Code of Professional Responsibility for Teachers ("the Code"). According to the Connecticut Teaching Competencies, a competent teacher helps students develop positive self concepts CT Page 1704 by recognizing and understanding the worth of all students and demonstrating sensitivity and respect for the needs and feelings of all students. According to the Code, teachers shall "recognize, respect and uphold the dignity and worth of students as individual human beings, and therefore deal justly and considerately with students" (FOF # 63). The court finds there is substantial evidence in the record from which the defendant Board could conclude that the plaintiff's conduct with regard to the student searches at issue failed to demonstrate the appropriate empathy and concern for the students involved and that such failure represented incompetence and other due and sufficient cause for termination of her contract of employment.
The defendant's sixth ground asserted is that there was uncontroverted evidence from a qualified medical doctor who is an expert in field of child psychiatry that the search in question had severe and long-lasting potential impact on a number of the students involved, and that this potential harm, and Ms. Young's demonstrated lack of concern for the situation in which her students were placed, represents inefficiency and incompetence, and other due and sufficient cause for termination of the plaintiff's employment. The Board was entitled to utilize the expert's testimony, as reflected in the findings and alternative findings of fact, in reaching its decision, but the court finds that the defendant has failed to state in its sixth reason, an independent ground sufficiently distinct from the fifth reason, on which to base a decision to terminate the plaintiff's contract of employment.
 X
The plaintiff alleges that the Board's actions violated her right to procedural due process. Established constitutional principles recognize that the property interest of a i tenured teacher in her employment entitles the teacher "to continued employment except; upon a showing of cause for termination or a bona fide elimination of the teaching position . . . [The right to continued employment] is a property right protected under the due process clause of the fourteenth amendment to the United States constitution (citations omitted). The protection constitutionally afforded to a tenured teacher is a right to "some form of hearing" and to other procedural safeguards such as a "written statement of the [employment] decision reached, the reasons for the determination, and a fair summary of the evidence relied upon". However, "[t]he Due Process Clause of the CT Page 1705Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions" (citations omitted)., Sekor v. Boardof Education, 240 Conn. 119, 129.
"The statement of reasons and a fair summary of the evidence relied upon need not reflect the polish of a judicial opinion. Reasoned and fair decision making, not technical finesse, is guaranteed by the due process standard of the state and federal constitutions", Lee v. Board of Education, 181 Conn. 69, 80. Applying these standards to the instant matter, the court finds that the plaintiff was accorded the requisite procedural due process, including adequate notice and opportunity to be heard, a written statement of the Board's decision, the reasons for the determination and a fair summary of the evidence relied upon. The plaintiff's claim of deprivation of procedural due process is unpersuasive.
 XI
The plaintiff also claims that the Board, by its actions, has deprived her of substantive due process. Even when the minimum requirements of procedural due process are met, substantive due process guarantees against arbitrary and capricious official actions still apply, Helm v. Welfare Commissioner,32 Conn. Sup. 595, 603 Substantive due process protects individuals against government action that is arbitrary, shocking to the conscience or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised, Lawrence v.Achtyl, 20 F.3d 529, 537. (2d cir. 1994). The plaintiff argues that the Board's decision was so egregious that it should be considered arbitrary and oppressive in a constitutional sense, in that the defendant Board voted to terminate the plaintiff "when no evidence suggested such a course of action". Because this court has found that there was substantial evidence in the record to support the board's decision to terminate the plaintiff's contract of employment, this claim must also fail. The court finds that the plaintiff was not denied her right to substantive due process by any action or omission of the defendant Board.
Finally, the plaintiff claims that the Board's decision to terminate the plaintiff violates the public policy inherent in General Statutes, Section 10-151. That statute ensured that a tenured teacher's contract of employment cannot be terminated except for cause. The defendant panel blatantly ignored the findings of the impartial hearing panel, the plaintiff claims, CT Page 1706 and terminated her without cause. This, claims the plaintiff, defeats the public c policy of insuring high quality education in Connecticut. Because this court has found that there was substantial evidence in the record to support the Board's decision to terminate the plaintiff's contract of employment, this claim must also fail.
 XII
The court finds that the plaintiff, Marie Young, has failed to establish, by a fair preponderance of the evidence, that the defendant, the New Haven Board of Education's decision to terminate the plaintiff's contract of employment, was; in violation of General Statutes, Section 10-151, in particular, Section 10-151 (e); in excess of the Board's statutory authority; based upon unlawful procedure; affected by other error of law; clearly erroneous in view of the reliable, probative and substantive evidence from the whole record; arbitrary, capricious and characterized by abuse of discretion or clearly unwarranted exercise of discretion; or contrary to the public policy expressed in Section 10-220, Section 10-151 and Section 151(b) of the Connecticut General Statutes.
Accordingly, the decision of the defendant Board of Education, terminating the contract of employment of the plaintiff, Marie Young, is affirmed
The relief requested by the plaintiff is denied and her Complaint is dismissed.
By the Court,
Downey, J.
Appendix 1
73. The Board's search and seizure policy, as set forth in the Administrative Procedures Manual, provides in relevant part:
Students
Search and Seizure
* * * CT Page 1707
Student Search
A student may be searched if there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated either the law or the rules of the school. The scope of the search must be reasonable related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.
Justification for Student Searches
Students possess the right to be free of unreasonable searches and seizures under the Fourth Amendment of the Constitution of the United States. Balanced against this right is the school official's responsibility to create and maintain an environment consistent with the school's educational mission. School Officials have a duty to protect the health, safety and welfare of all students under their authority.
* * *
Student Searches
School authorities are authorized to conduct searches of students or their property when reasonable suspicion indicates that a particular student is in possession of an item or a substance that represents a material threat to school routine or is prohibited by school board regulations or by law. Student property shall include, but not be limited to, purses, bookbags and cars. If students do not have access to their cars during school hours, the justification for searching student-driven cars is removed.
School authorities in cooperation with the local police department reserve the right to conduct sniff searches with dogs of school property and student-driven cars.
* * *
Student Searches
All searches of students shall be conducted or authorized by the principal or designee, in the presence of a witness.
When the need to search a student arises, the student may be CT Page 1708 asked to give his or her consent to the search, but in no even shall the student be threatened with harsher punishment or treatment for refusing to consent, nor shall he or she be coerced or induced to give consent in any other manner. The consent, if given, shall be put in writing. If the student is unwilling to give free and voluntary consent, the school administrator may order the student to submit to a search. If the student refuses to obey the order, the school administrator may bring insubordination charges against the student as stipulated in applicable school regulations.
Searches should be no more intrusive than necessary to discover that for which the search was instigated.
A search of a student's handbag, gym bag or similar personal property carried by the student may be conducted if there is "reasonable grounds" for suspecting that the search will turn up evidence that the student has violated or is violating wither the law or the rules of the school.
Locker searches shall be conducted in the presence of another staff member and in the presence of the student responsible for the contents of the locker, if possible.
Searches may include, if school authorities think necessary, a frisk or patdown of student clothing. Frisk or patdown searches shall be conducted by a member of the same sex as the student and in the presence of another staff member.
At no time should school officials conduct a search which requires a student to remove more clothing than his/her shoes or jacket. If school authorities are convinced that a more intrusive search is required to expose contra brand they should advise the proper law enforcement agency.
A search of a student's person, or a search of a group of students where no particular student within the group is suspected, may be conducted only if there is a reasonable suspicion of conduct immediately harmful to students, staff or school property. "Strip searches" of students by employees of this school district, are prohibited.
Student searches which disclose evidence of school misconduct, but no criminal misconduct, should be treated according to applicable policies and/or regulations. CT Page 1709
In the event that a student search discloses evidence of criminal wrongdoing, the school principal or his/her designee shall determine whether or not police officials should be notified of the fruits of the search. If police officials are notified the student's parents should be advised of this fact as soon as possible.
Students shall be informed annually that board policy allows student search and school desk/locker search.